GRUBB and others vs. THE TOWN OF MENOMONEE.

*Ch. 14, Laws of 1865—Bounty tax—Power of electors to fix amount to be paid each volunteer, &c.—Procurement of substitutes—Volunteering without knowledge of offer.*

1. Under ch. 14, Laws of 1865, the electors of a town, at their meeting to vote upon the question of raising bounty money, were empowered to fix the amount (not exceeding $200,) which should be paid to each volunteer or person furnishing a substitute, or to the family of any volunteer or drafted man. COLE, J., dissents.

2. The plaintiffs, six in number, being subject to military duty, and residents of a town in which a bounty had been voted, entered into a contract with three persons, "by which said plaintiffs, as a joint association, jointly agreed to pay to each of said other contracting parties $300," in consideration of which each of the latter volunteered to the credit of said town, &c. *Held*, that as no one of the three persons who volunteered did so as a substitute for any particular person, the plaintiffs are not entitled to the bounty offered to persons who furnished substitutes.

3. Plaintiffs also claim as assignees of the claims of said three volunteers, but the complaint does not allege that either of said volunteers knew of the offer of the town at the time, assented to it, and enlisted with a view to obtain the bounty money, nor that due notice was given the town of their having enlisted and being credited to the town. *Held*, on demurrer, that the complaint did not show them entitled to bounty money.

APPEAL from the Circuit Court for *Dunn* County.

The complaint, after alleging proceedings in pursuance of law in calling a special town meeting in the defendant town, "for the purpose of voting upon the question of raising by tax $6000, to pay a bounty of $200 each to volunteers who should thereafter enlist under the call of the president of the United States, of December 19, 1864, and should be credited to said town under such call, and to persons who should procure substitutes for themselves before being drafted, and should have them credited to said town upon its quota," further avers that on the 14th of February, 1865, said town meeting was held and conducted according to law; that the electors voted "the proposed tax of $6000;" that thereafter, pursuant to the statute, the town treasurer proceeded to the collection of said

tax, and more than $2000 thereof has been paid and is now in the town treasury; that the quota of the town under said call was about forty men, which was not filled in whole or in part at the date of the enlistment and mustering of the volunteers hereinafter mentioned; that on the 18th of March, 1865, plaintiffs, being then residents of said town, subject to military duty, and not drafted, entered into a contract with three persons named, by which plaintiffs jointly agreed to pay to each of said other parties $300, in consideration of which each of said other parties agreed to volunteer into the military service of the U. S. under said call, to the credit of said town; that (pursuant to an order theretofore received from the office of the provost marshal of the sixth district, in which said town was situate, to the effect that three persons volunteering into said service out of every ten persons enrolled in said town would release the remaining seven from all liability to be called into said service under said call, or [entitle them to be] placed in a separate class as hereinafter mentioned), it was further agreed that said other contracting parties should cause the names of plaintiffs to be stricken from the list of those liable to such service under said call, or to be placed in a separate class according to the usages in said provost marshal's office; and should, in consideration of said sum of $300, assign to plaintiffs any claims which they or either of them might have against said town; that such assignment was accordingly made; that afterwards said other contracting parties volunteered and entered into the military service aforesaid to the credit of said town, and were accepted and mustered into the service (about April 1st, 1865), to such credit, and to the credit of the plaintiffs as above stated, and were paid said sum of $300 each; that said town thereby became indebted to plaintiffs in the sum of $600, and interest from April 1, 1865, which it refused to pay on demand. For a second cause of action substantially the same facts are stated, with a further aver-

ment, "that said volunteers were so procured and enlisted and mustered as substitutes for plaintiffs, insomuch that by the orders and regulations of the board of enrollment of the district in which said town was situate, said enlistment relieved plaintiffs from liability under said call until the roll of all other persons subject to do military duty in said town was first exhausted." It is also alleged that plaintiffs procured and paid such volunteers, and had them credited to the town, with the full knowledge of the board of supervisors thereof; that defendant never in any manner objected to receive such credit; and that "said enlistment was made, and said volunteers were procured, after such tax was voted as aforesaid, and in consideration thereof, which fact was at the time well known to the board of supervisors of said town."

A demurrer to the complaint, for defect of parties plaintiff, for misjoinder of causes of action, and for insufficiency of facts, was overruled; and defendant appealed from the order.

*A. J. Messenger* (with whom were *Waldo, Ody & Van.* of counsel), for the appellant, argued that this was an action on contract; that the complaint did not show any contract by defendant to pay the sum claimed or any other; that under the statute (secs. 1 and 5, ch. 14, Laws of 1865), the supervisors alone had power to make such a contract, and they could bind only to the amount of the tax voted ($6,000), and therefore could not contract to pay $200 to each of the 40 men required to fill the quota; and that no attempt on their part to make any contract is alleged. The town meeting was authorized to do just three things: (1.) To fix the amount of the tax to be voted upon at or below the sum specified in the petition. (2.) To vote for or against the tax. (3.) To determine for which of the three purposes named in the act the tax should be raised and used. The act of 1862, in its first section, expressly authorized the town meeting to offer bounties and to fix the amount to be paid to each man. The act of

Grubb and others vs. The Town of Menomonee.

1865 omits that clause, with the evident intention not to leave that power to the meeting of electors; while sec. 5 directs the money to be disbursed as the supervisors shall authorize.*

*E. B. Bundy* and *Stevens & Lewis*, for respondents, contended that under the statute the electors of the town, at their meeting, were empowered to offer a specific amount (not exceeding $200) to each volunteer, or person furnishing a substitute; and that such an offer made by the town and accepted by the plaintiffs, or by the volunteers, constituted a valid contract. *State ex rel. Dockstader v. Town of Richmond,* 20 Wis., 287; 1 Story on Con., § 380 et seq.

DOWNER, J. One of the principal questions for our consideration, on this appeal, is whether, under the provisions of chap. 14, Laws of 1865, commonly called the bounty act, the qualified electors of each town, at their meeting, had authority to fix the amount of bounty to be paid to each volunteer, not ex ceeding two hundred dollars. The first section of the act pro vides that the qualified electors of each town shall have power, at any annual or special meeting thereof, to raise by tax such sum or sums of money as they may deem necessary, to pay bounties to volunteers, and to persons who shall procure substitutes for themselves, and to give aid to families of volun teers or drafted men: "*provided*, that no more than two hundred dollars shall be paid to any such volunteer, or person fur-

---

* The provisions of sec. 1 of the act are recited in the opinion of Mr. Justice DOWNER. Sec. 2 provides that a special meeting of the town may be called by petition of five electors, "which petition shall set forth the purpose or purposes for which said special meeting is asked * * together with the amount of money sought to be appropriated or raised by tax at such meeting for said purposes." It also provides that the electors assembled at any such meeting * * may, before proceeding to vote on the question of raising any such tax, determine upon a less sum to be voted for any such purpose than the amount named in the petition aforesaid." Sec. 5 provides that the moneys so raised "shall be paid out by" the town treasurer "as authorized by the supervisors of his town, * * in pursuance of the direction of the meeting which voted the same, and for the purposes contemplated by this act."

nishing a substitute, or to the family of any volunteer or drafted man, out of the money so raised."

It is contended that by this section the power is given in the enacting clause to the electors to determine the entire amount to be paid to volunteers, but not the sum to be paid to each. The amount to be paid to all must be made up of the separate sums to be paid to each; and it would be reasonable to construe the grant of power to determine the former to include the latter. If, however, without the proviso, there could be any doubt of the intention of the legislature, the proviso, it appears to us, entirely removes the doubt. What is the meaning and effect of the proviso? A proviso generally restrains the enacting clause, and is a limitation or exception to a grant made or authority conferred. BALDWIN, J., in *Voorhies v. Bank of U. S.,* 10 Peters, 471. The proviso in section one, we think, is a limitation of the authority conferred by the enacting clause of that section. This is the natural construction. The proviso, by prohibiting the payment of more than $200 to any volunteer, prohibits the electors from voting to pay more than that sum to any one. It may also be indirectly a limitation upon the power given to the supervisors in section five of the act; for if the electors do not fix the amount to be paid to each volunteer or person procuring a substitute, the board of supervisors may.

The complaint we regard, therefore, as setting out in substance a proposition on the part of the town to pay to each person who should within a reasonable time accept it, two hundred dollars, until the sum voted to be raised should be exhausted.

2. Do the plaintiffs, in and by their complaint, show that they accepted of this proposition by acting under it in procuring substitutes for themselves within the meaning of the act? We think not. Six men hired three men to volunteer and cause themselves to be credited to the town on its quota. This

did not necessarily relieve the six, except temporarily, from being drafted under the same call.  No one of the three volunteered as a substitute for any one of the six, or for any particular man.

3. There is no averment in the complaint that the three persons volunteering, either or any of them, knew when they volunteered of the offer of the town, assented to it, and enlisted with a view to obtain the bounty money, and that due notice of their enlisting and being credited on the quota of the town was given to the town.  For the want of these allegations, the complaint is defective, within the rule laid down by this court in *The State of Wisconsin ex rel. Dockstader v. The Supervisors of the Town of Richmond*, 20 Wis., 287.

DIXON, C. J., concurred.

COLE, J.  I have very serious doubt upon the first point decided in the above opinion : namely, that the law of 1865 gives the electors power to vote that each volunteer should receive $200.  This authority was given the electors by the former statutes most clearly.  Chap. 13, Laws of 1862, E. S.  But the phraseology of the law of 1865 is different ; and I doubt very much about its conferring this power on the electors of the town.  I cannot therefore concur in the reasoning of Mr. Justice DOWNER on that point.

*By the Court.*—The order of the circuit court is reversed.