Marsh and another, Adm'rs, vs. The Supervisors of St. Croix County.

Marsh and another, Administrators, vs. The Supervisors of St. Croix County.

MONEYS PAID COUNTY ON VOID TAX CERTIFICATES. *(1, 2) Jurisdiction of county board, as to claim for such moneys. Ch. 250 of 1873. (3, 4) Statute of limitation upon such claims; when action commenced. (5) What constitutes a voluntary redemption. (6) Limit of recovery.*

1. Ch. 250 of 1873 declared that if the holder of any tax certificate sold by the county of St. Croix for less than the face thereof, with accrued interest, should claim that such certificate was invalid, it should not be lawful for him to present a claim against the county for a greater amount than was paid to it for such certificate, with interest thereon, and no officer or agent of the county should pay him a greater amount. *Held,* that this was not designed to deprive the county board of any *jurisdiction* which it had previously exercised in the allowance of claims; and where the holder of such a certificate presented a claim for the whole amount of the face thereof, with interest, and the proof was that he had paid a less sum therefor, and the board disallowed the claim *in toto: Held,* that

Marsh and another, Adm'rs, vs. The Supervisors of St. Croix County.

the board, and the circuit court on appeal from its decision, had jurisdiction of the action. *Stringham v. Supervisors*, 24 Wis., 594.

[2. Whether and how far said ch. 250 is a valid act, is not here determined.]

3. The presentation to the proper board of county supervisors, of a claim for moneys paid upon void tax certificates, is the *commencement of an action*, within the meaning of ch. 112 of 1867; and, if made within six years after the issue of the certificate, or its assignment by the county, will prevent the bar of the statute from attaching.

4. If such claim, seasonably presented, be disallowed by the county board for lack of requisite proof of ownership, or because several distinct claims are included in one account, and the claimant, before the next annual meeting of the board, but after the expiration of the six years, presents the claim *in* such a form as to obviate the objections taken to it, this will be regarded as a *continuation of the proceeding first taken*, and the bar of the statute will not attach.

5. Lands were sold to the county for nonpayment of taxes assessed thereon, but to which they were not subject, and the owners purchased the outstanding certificates from the assignee of the county, and also took quitclaim deeds from him of such of the lands as had been conveyed to him by tax deed. *Held*, that this was not a voluntary redemption of the land, and the owners may recover of the county under the statute.

6. Where a county assigns tax certificates, afterwards found to be invalid, for a less sum than their face, the assignee, or those claiming under him, can recover from the county no more than the amount actually received by it, with interest.

APPEAL from the Circuit Court for *St. Croix* County.

Secs. 26, 27 and 30, ch. 22, Laws of 1859, contain the following provisions relating to the sale of lands for taxes: "Sec. 26. If the county treasurer shall discover before the sale as aforesaid, that, on account of irregular assessments, or for any other error, any of said lands ought not to be sold, he shall not offer the same for sale; and if, after any certificate shall have been granted upon the sale of the same, as aforesaid, the clerk of the board of supervisors shall discover that for any error or irregularity the lands so sold ought not to be conveyed, he shall not convey the same, and the county treasurer shall, on demand, refund the amount paid therefor on such sale, and all subsequent taxes and charges paid thereon by the purchaser or his assigns, out of the county treasury,

with interest on the whole amount at the rate of seven per cent. per annum. Sec. 27. If, after the conveyance of any lands sold for taxes, it shall be discovered that the sale was invalid, the county board of supervisors shall cause the money paid therefor on the sale, and all subsequent taxes and charges paid thereon by the purchaser or his assigns, to be refunded, with interest on the whole amount at the rate of seven per cent. per annum, upon the redelivery of the deed to be cancelled. Sec. 30. If any person, within two years after the payment of any tax by him, can satisfactorily show to the county board of supervisors that the same was improperly assessed, or was paid by a mistake when it was not legally chargeable, the said board shall order the same to be repaid by the county treasurer." Ch. 68, Laws of 1870, amended said sec. 26, by striking out all after the words " shall not offer the same for sale." See Tay. Stats., 432, § 152; 443, § 179; 447, § 197.

Sec. 1, ch. 112, Laws of 1867, as amended by sec. 1, ch. 56, Laws of 1868 (Tay. Stats., 444, § 182), is as follows: " From and after six years from the day of sale of any lands or lots heretofore sold, or hereafter to be sold, for the nonpayment of taxes, by any officer of any county, city or village, no deed shall be issued on the certificate or certificates of sale issued on such sale, and no action, either at law or in equity, shall be commenced on such certificate after the expiration of six years from the said day of sale; *provided*, that the provisions of this section shall not apply to certificates owned by counties or municipal corporations, or by their assignees, until the expiration of six years from the date of assignment of such certificates."

Secs. 42, 43, ch. 13, R. S. 1858 (Tay. Stats., 303, §§ 56, 57), are as follows: " Sec. 42. No action shall hereafter be maintained by any person against a county, on any claim or demand other than a county order, until such person shall first have presented his claim to the board of supervisors of such

Marsh and another, Adm'rs, vs. The Supervisors of St. Croix County.

county for allowance.   Sec. 43.   The determination of the board of supervisors of any county, disallowing in whole or in part any claim of any person, shall be final and conclusive, and a perpetual bar to any action in any court founded on such claim, unless an appeal shall be taken from the decision and determination of such board of supervisors, or unless such board of supervisors shall consent and agree to the institution and maintenance of an action by such claimants against such county; *provided, however,* that when the board of supervisors shall refuse or neglect to act upon any claim duly presented to them, this chapter shall not be so construed as to prevent the institution and maintenance of an action by such claimant."   By sec. 40 of the same chapter, the appeal from the determination of the county board in such case lies to the circuit court for the same county; and a written notice of the appeal must be served on the clerk of the board within thirty days after the making of such determination.

Sec. 1, ch. 250 of 1873, is as follows:   "In any case where the county of St. Croix, by its agents or officers, has sold or assigned, or shall hereafter sell or assign, any tax certificates at less than the full value thereof, with accrued interest, and any such tax certificate shall be claimed by the owner or holder thereof to be invalid, it shall not be lawful for the owner or holder thereof to present a claim against the county for a greater amount than was paid by said county for the tax certificate, with seven per cent. interest thereon, and no officer or agent of said county shall pay to the holder of such a certificate a greater amount for the same than is provided for in this section."

In November, 1873, a claim was presented to the board of supervisors of the county of St. Croix in favor of the "estate of Samuel Marsh, estate of John Magee, estate of Erastus Corning, Horatio Seymour, John F. Seymour, Edward C. Delavan, Abraham B. Clark, Wm. B. Ogden, Daniel Wells, Jr., Lambertus W. Ledyard, Charles B. Stevens, Breese J. Stevens,

and William Allen Butler," in which the county was debited to the parties named as follows: 1. To 179 tax certificates upon lands described in a certain schedule annexed to the claim, sold in September, 1864, for taxes of 1863, and deeded upon such sale to C. Y. Denniston, March 27, 1868, amounting to $841.18, and to interest on that sum from the day of sale, and certain fees in specified amounts, making altogether the sum of $1,400.28. 2. To 162 tax certificates upon lands described in another schedule, sold in May, 1867, for the taxes of 1865, amounting to $1,129.79, and to interest upon that sum from the day of sale, making an aggregate of $1,644.63. 3. To 178 tax certificates upon premises described in a third schedule, sold in September, 1865, for taxes of 1864, and deeded upon such sale to C. Y. Denniston, September 19, 1868, amounting to $997.52, and to interest on that sum and certain fees, etc., making an aggregate of $1,584.83. The whole amount claimed upon all the schedules was $4,629.74. A statement accompanying the said account declared that the parties above named asked to have said last mentioned sum refunded to them, "according to their respective interests in said lands," on the ground that the tax certificates and tax deeds named therein were void for various reasons there assigned. One of these reasons was, that as to the lands described in the first two schedules, the amount for which they were sold included five cents for a revenue stamp placed on each certificate. Another reason was, "that the lands described in said schedules were not liable to assessment and taxation for the years 1863, 1864 and 1865, as appeared from the decision of the supreme court of this state in *Denniston v. The Unknown Owners*, 29 Wis., 351." There was a further statement annexed to said account as follows: "This account is presented in behalf of the above named parties in severalty, each owning in severalty the specified lands opposite the description of which his name is placed on schedule A, hereto annexed, and the amount due to each is his proportion of the total sum stated at the foot of

said schedules, according to the quantity of lands owned by him as indicated in said schedules. At the foot of the schedules is stated the total sum due to all of said parties on all of the descriptions of land contained in said schedules." The account was verified in behalf of the claimants by the affidavit of one of their attorneys, who states that he verily believes that the account is in all respects just and true, and that no part thereof has been paid or allowed. A committee of the board, to whom this claim was referred, reported that it "should be disallowed," upon the following grounds: 1. That it nowhere appeared that the claimants had ever bought or paid for the certificates named, or then owned the same. 2. That the affidavit attached to said claims did not show that the affiant had any knowledge of their truth. 3. That the mingling of several claims in one account, where there is no connection between them [the claimants] as partners or joint owners, is not a compliance with the statute in regard to the presenting of claims against the county. This report was adopted, December 1, 1873.

Afterwards, in November, 1874, the plaintiffs in this action, as administrators of the estate of Samuel Marsh, presented to said board of supervisors an account, 1. For the amount of the taxes, charges and interest for which the lands described in schedule "A" thereunto annexed, were sold in September, 1864, for taxes of 1863, and also for the fees paid for making and recording the deed of said land (issued to C. Y. Denniston, March 27, 1868), with interest on said amounts. 2. For the amount of taxes, charges and interest for which the lands described in schedule "B" thereunto annexed, were sold in September, 1865, for taxes of 1864, and also certain fees for making and recording a deed of said lands (issued to said Denniston, September 19, 1868), with interest on said amounts. 3. For the amount of tax certificates described in schedule "C" thereunto annexed, issued by said county on sales of the lands therein described, made in 1867 for the taxes of 1865. 4. For the amount of tax certificates described in schedule

" D " thereunto annexed, issued by said county on sales of lands therein described, made at the times and for the taxes in said schedule stated. 5. For fees for canceling said certificates and deeds. The total amount claimed, apart from fees, was $1,196.58, with interest on the several sums composing that amount, from the several days of sale. The tax sales, certificates and deeds above mentioned were claimed to be void upon various grounds, one of which was, that none of the lands described in schedules " A," " B " and " C " were subject to taxation for the years 1863, 1864 and 1865; and another was, that five cents for a revenue stamp on each certificate was included in the amount for which the lands were sold. The account was duly verified.

It appears that the lands, tax sales, certificates and deeds named in the aforesaid account, and the several sums therein charged against the county, are substantially the same as those upon which the several claim in behalf of the estate of Samuel Marsh, set forth in the joint account first above described, presented to the board in 1873, was based. It also appears that eleven other claims of like character, in behalf of the several estates and individuals named in the said joint account, were presented to the county board at the same time. A committee of the board reported in regard to all these claims, that they " are not lawful claims against St. Croix county; therefore, we recommend that no action be taken on them. See Laws of Wisconsin, 1873, ch. 250." This report was adopted by the board; and thereupon the claimants appealed to the circuit court.

By leave of the circuit court, against plaintiffs' objection, after the cause had come on for trial, and a jury had been waived, and the stipulation hereinafter mentioned had been read in evidence by the plaintiffs, the defendant filed a formal answer, setting up the following defenses: 1. That all the tax certificates mentioned in the complaint were sold by the county of St. Croix, January 22, 1868, to C. Y. Denniston, for

fifty per cent. of the amount therein mentioned, without interest, and no other or greater sum was ever paid the county for the same.    2. That more than six years had elapsed after the cause of action mentioned in the complaint accrued, before said claim was presented to the board of supervisors of said county.    3. That the plaintiffs' intestate had been for more than six years past the owner of all the lands described in said tax certificates and deeds, and had voluntarily paid the taxes for which said lands were sold; and that more than two years elapsed after said payment, before said claim, or any part thereof, was presented to the defendant.    4. That all the claims mentioned in the complaint had been presented to the board of supervisors of said county, at an annual meeting thereof [meaning in November, 1873], and had been disallowed by said board; that no appeal had ever been taken from that determination; and that the board had never consented to the institution of any action or proceedings by the plaintiffs against the county on said claims.    5. That neither said deeds nor said certificates were presented by the plaintiffs to the board of supervisors of said county for surrender and cancellation, at the time of the presentation of said claims, or at any time thereafter.

On the trial of this action, the following facts were admitted by stipulation, having reference in part not only to this action but to the other eleven actions above described: 1. The lands described in the several claims upon which said actions were founded, were all lands granted by congress to aid in the improvement of the Fox and Wisconsin rivers, in this state, and were of the same class of lands, and largely the same lands, involved in the case of *Denniston v. The Unknown Owners*, 29 Wis., 351.    None of said lands were sold by the trustees of the Fox & Wisconsin Improvement Company prior to the year 1866.    2. All the lands described in said claims or complaints are now and were owned by the plaintiffs respectively as therein stated.    3. All the lands described in said

complaints were sold for the nonpayment of taxes, by the treasurer of the county of St. Croix, at the times, for the amounts and in the manner therein stated; and at such sales said county became the purchaser thereof, and certificates of sale were issued thereon. 4. Said tax certificates were duly assigned to C. Y. Denniston, and upon a part of them certain tax deeds were issued to said Denniston. 5. The lands conveyed by said deeds were afterwards duly conveyed by said Denniston to D. M. Kelley; and that portion of said tax certificates upon which no deeds were issued, were duly assigned and transferred to said Kelley, each and all for a valuable consideration. 6. A judgment was recovered in the circuit court for the county of St. Croix in favor of said Denniston, against the unknown owners of said lands, upon the tax deeds described in schedule " A " attached to said claims; which judgment was subsequently reversed upon appeal to the supreme court. Said judgment, before its reversal, was duly assigned by Denniston to said Kelley, for a valuable consideration. 7. After such reversal, and on or about June 1, 1872, Samuel Marsh (the plaintiffs' intestate) advanced and paid to Mr. Kelley the money which the latter had paid upon the purchase of said tax certificates, deeds and judgment, which said advance and payment was designed by Mr. Marsh as an advance and payment by the said plaintiffs respectively, in proportion to their interests in said lands, and was made by Marsh without the knowledge of said parties, but at the request of their attorney. Subsequently, the advances made by Marsh having been repaid him by the several plaintiffs, Kelley, on the 30th of June, 1874, executed deeds and assignments to the several plaintiffs, transferring to them respectively the tax certificates and tax deed interest in the several lands, which he had received from Denniston, together with a proportionate interest in the judgment so assigned to him. 8. The sum of five cents for an internal revenue stamp, placed on each tax cer-

tificate issued on the sales of the lands described in schedules "A" and "B" attached to said claims, was included in the amount for which said lands were sold.  9. On the 9th of November, 1874, these several claims were presented to the county treasurer of St. Croix county for payment, and payment was demanded and refused; and the same claims were on the same day presented to the county clerk of said county, and payment demanded and refused, and they were thereupon filed with him; but whether said certificates and deeds were presented at the same time for cancellation, is left to proof. 10. The plaintiffs have been since 1867, and now are, the owners of the lands described in the tax certificates and tax deeds mentioned in their several claims.  11. The sum paid by C. Y. Denniston to the county of St. Croix for the tax certificates mentioned in said claims, and for the certificates upon which the tax deeds there mentioned were issued, was fifty per cent. of their face, without interest, which sum was paid on the 22d of January, 1868; and no other or greater sum was ever paid to or received by said county for said certificates or any of them.   Prior to said sale, a resolution and order had been made and adopted by the board of supervisors of said county, authorizing and directing the same.   12. The suit expenses of defending the action of *Denniston v. The Unknown Owners*, above mentioned, were $1,000.   The sum paid by Kelley as aforesaid was $3,465.25, and was paid on the 20th of May, 1870, in compliance with an agreement by which he agreed to pay the face of all tax certificates so transferred to him, and, where tax deeds had been taken, the face of all the tax certificates included in said deeds, together with interest thereon for two years at seven per cent.; and the excess, if any, which the sum paid is over the amount so agreed to be paid, was for the costs, expenses, etc., included in said judgment.

The stipulation herein also included the facts first above

stated, in respect to the joint claim or account presented in 1873; but plaintiffs' counsel insisted that those facts were immaterial, irrelevant and inadmissible in evidence.

Upon the question whether the plaintiffs offered to surrender their certificates and tax deeds for cancellation, at the time of presenting their claim and demanding payment, the circuit court found in their favor. It also found that the plaintiffs' intestate, at the time he advanced and paid to Kelley the amount paid by the latter for the certificates, tax deeds and judgment, knew that the amount paid to the county by Denniston, January 22, 1868, for said certificates, was only fifty per cent. of the face of the certificates; and that the amount so paid for the certificates included in *this* action was $598.29, and the interest accrued on that sum to the time of trial, was $327.87, making a total of $926.16.

As conclusions of law, the court held that the county board had jurisdiction of plaintiffs' claim; that plaintiffs were entitled to bring the action at any time within six years after discovering that the sale was invalid; that, in the absence of contrary proof, it must be assumed that the statute began to run from the time when the supreme court (in 1872) adjudged the tax to be void; that the purchase by the plaintiffs of the tax certificates, etc., did not operate as a voluntary payment of the tax; that their right of recovery was limited to the amount actually paid to the county, with interest; and that they were entitled to judgment in the above named sum of $926.16.

From a judgment in accordance with these conclusions, both parties appealed.

For the plaintiffs, a brief was filed by *Sloan, Stevens & Morris*, and the cause was argued orally by *Mr. Stevens*. They contended, 1. That the board of supervisors had jurisdiction of the claim presented by the plaintiffs. (1) Ch. 250 of 1873 does not purport to repeal or modify the previous statutory provisions relating to the submission of claims to boards of supervisors and appeals therefrom. The prohibitory

language used is just as applicable to the commencement of actions in the usual form against the county, as to the presentation of claims to the supervisors. It relates to the right of recovery, and not to the form of procedure. It prohibits payment on an illegal certificate of a greater amount than was paid to the county on its assignment, with interest. It also, in terms, prohibits the holder from presenting a claim for such greater amount; but it prescribes no penalty therefor, nor does it prohibit the board from considering such claim, if presented, and allowing the same at the amount for which the certificate was assigned, and interest, or even to a greater amount. (2) The act relates exclusively to St. Croix county, and to tax certificates bid off by that county. From the whole act, taken together, it clearly appears to have been designed to relate exclusively to the certificates in this case, and the cases tried with it. The act was therefore special, and void for that reason. *Durkee v. Janesville*, 28 Wis., 464. (3) As to the certificates in question, the act was void for the further reason that it impaired the obligation of contracts then existing between the holders and the county, the full provisions of which contracts were expressed in the certificates and the laws of the state relating to the right of recovery thereon, in force when the certificates were issued. *Green v. Biddle*, 8 Wheat., 17; *Bronson v. Kinzie*, 1 How., U. S., 311; *Burch v. Newbury*, 10 N. Y., 374; Potter's Dwarris, 431; *Von Baumbach v. Bade*, 9 Wis., 559; *Robinson v. Howe*, 13 id., 341; *Smith v. Cleveland*, 17 id., 556; *Lain v. Shepardson*, 18 id., 59; *Woodman v. Clapp*, 21 id., 350; *Davis v. Menasha*, id., 491; *Nelson v. Rountree*, 23 id., 367; *State v. Hundhausen*, id., 512; *Kearns v. McCarville*, 24 id., 457; *Curtiss v. Morrow*, id., 664; *State ex rel. Voight v. Hœflinger*, 31 id., 257. 2. That the claim was not barred. Sec. 30, ch. 22, Laws of 1859, applies only where the tax was paid before sale; and it does not prohibit payment by the board after the time limited. There is no statute of limitations affecting this class

of cases, except ch. 112, Laws of 1867. *State ex rel. Wolff v. Sheboygan Co.*, 29 Wis., 79–82; *Baker v. Columbia Co.*, 39 id., 444. Said ch. 112 did not bar the action. (1) That act took effect January 1, 1868, and this action was commenced in November, 1873, by the presentation of a joint claim. *Boyce v. Foote*, 19 Wis., 199. The statute authorizes the board to require accounts to be presented in due form, and allows accounts to be withdrawn for correction. Tay. Stats., 301, § 47; 302, § 51. The board took exceptions merely to the form of the account and of the verification accompanying it, and not to the substance of the claims therein made; and they did not reject or disallow the claim so as to render an appeal necessary. They might lawfully require the claims to be stated in a more satisfactory form before acting upon them. *Eaton v. Manitowoc Co.*, 40 Wis., 672. The claim was, however, duly presented in 1873, even though the verification was defective. *Parker v. Grant Co.*, 1 Wis., 414; *Pulling v. Columbia Co.*, 3 id., 337. As soon as notice of the objections taken was given to the plaintiffs, and before the next meeting of the board, they caused to be presented, in support of said joint claim, their separate claim, so amended, as to meet such objections. The filing of the amended claim was no more the commencement of this proceeding than the filing of an amended complaint at the circuit is the commencement of a suit there. (2) The action was commenced within less than six years after the discovery of the illegality. The burden is on the defendant to show that the discovery was not made within the six years. It does not appear when it was first discovered that the cost of internal revenue stamps was included in a part of the certificates. *Mead v. Chippewa Co.* 41 Wis., 205. As to the invalidity of the sales on the ground that the lands were not subject to taxation, plaintiffs could not be required to proceed with the action on that ground before the judgment of the circuit court in *Denniston v. The Unknown Owners*, affirming their liability to taxation, was re-

versed. (3) The statute was not pleaded at the proper time. The claim of the plaintiffs stood as the complaint in the action, and the proceedings of the board thereon as the answer. *Tarbox v. Adams Co.*, 34 Wis., 558; *Warner v. Outagamie Co.*, 19 id., 611. That answer did not set up the statute of limitation, and hence, that defense was waived. *Mead v. Chippewa Co., supra,* and the two cases last cited. The board, having placed their refusal to allow the account on specific grounds, had no right to subsequently change the ground, and set up the statute of limitation; and it was an abuse of discretion for the court to grant defendant leave to file a formal amended answer, after the appeal had been taken, and after one or more terms had passed (including one at which it was stipulated that the cases should be for trial at a subsequent term), and after nearly all the testimony had been given and read in open court. *Fogarty v. Horrigan*, 28 Wis., 142; *Eldred v. The Oconto Co.*, 30 id., 206; *Newman v. Kershaw,* 10 id., 333; *Dole v. Northrop*, 19 id., 249. (4) Ch. 144, Laws of 1874 (published March 21st of that year), extended the time within which actions of this character might be brought, to six years from the time deeds would have been due upon the certificates — an extension of three years. This was an equitable claim against the county, and the legislature, under its taxing power, was competent to compel payment. Ch. 144 was a release of the statutory bar (if such existed), and was equivalent to a direct requirement to levy a tax and pay. *Brodhead v. Milwaukee*, 19 Wis., 652; *May v. Holdridge*, 23 id., 98; *State v. Tappan*, 29 id., 664. 3. That the court erred in holding that plaintiffs were not entitled to recover the full amount for which the lands were sold at the public sale, with interest. The rights of counties to bid off lands at public tax sales, and to assign the certificates, and the right of the assignees to recover upon illegal certificates so assigned, have existed since 1842 (*Parish v. Eager*, 15 Wis., 533), have been recognized repeatedly since that time by legal

enactment (Tay. Stats., 429, § 141; 430, §§ 143–147; 432, § 152; 443, § 179; R. S. 1858, ch. 18, sec. 124; secs. 26, 27, ch. 22, Laws of 1859; ch. 112, Laws of 1867; ch. 56, Laws of 1868; ch. 250, Laws of 1873; ch. 144, Laws of 1874), and have been settled by recent decisions of this court. *Baker v. Columbia Co.*, *Eaton v. Manitowoc Co.*, and *Mead v. Chippewa Co.*, *supra*. It is equally certain that the county had authority to sell the certificates at less than their face. Secs. 26 and 27, ch. 22, Laws of 1859 (which were in force when these lands were sold), relate to the *public sale of the land*, and direct the county to refund to the purchaser or his assigns the amount paid *on such sale*. These provisions have been held valid by this court. *Norton v. Rock Co.*, 13 Wis., 611; *Van Cott v. Milwaukee Co.*, 18 id., 247; *Hutchinson v. Sheboygan Co.*, 26 id., 405; *State ex rel. Wolff v. Sheboygan Co.*, 29 id., 82, 83; *Barden v. Columbia Co.*, 33 id., 445. Moreover, this court has declared that, in the exercise of its equitable power, it would have granted the relief given by those sections irrespective of any statute. *Norton v. Rock Co.*, *Van Cott v. Milwaukee Co.*, *Barden v. Columbia Co.*, *supra*; *Hurley v. Town of Texas*, 20 Wis., 634. Plaintiffs were obliged to pay, on the purchase of the certificates in question, the full face thereof, with interest and the costs and expenses of litigation added, amounting to $3,465.25. It certainly would not be equitable to restrict their recovery to a sum less than they were obliged to pay, or at least to a sum less than the county, by its assignment of the certificates, virtually covenanted to pay if they should prove invalid.

For the defendant, briefs were filed, signed by *Davis, O'Brien & Wilson* and *J. E. Glover*, and the cause was argued orally by *C. D. O'Brien*. They contended, 1. That there was no abuse of discretion in permitting the statute of limitations to be pleaded. *Baker v. Columbia Co.*, 39 Wis., 444; *Tarbox v. Adams Co.*, 34 id., 558; *Eaton v. Manitowoc Co.*, 40 id., 668. 2. That the claim was barred at least after the lapse of

six years from January 22, 1868, the date of the assignment of the certificates to Denniston. Ch. 112, Laws of 1867, as amended by ch. 56, Laws of 1868. See also sec. 30, ch. 22, Laws of 1859, and the general statute of limitation, Tay. Stat., 1625, § 17, subd. 1. The parties were bound to know the law, and that under it the lands were not subject to taxation; and the court below erred in holding that the discovery was not made until the supreme court had so decided. *Baker v. Columbia Co., supra*. 3. That this action was not commenced until the plaintiffs presented their claim in 1874. The only basis for the assertion that the action was begun in 1873, is the reference in the stipulation of facts to a former proceeding, in which these plaintiffs and other persons were concerned, and which had been abandoned; and the stipulation shows that the admissibility of that fact was objected to by these plaintiffs, who now seek to rely upon it. As the trial court did not find upon that statement, the presumption is that plaintiff's objection to the evidence was sustained; and they cannot now object to the ruling which they invoked. The action of the board upon the claim of 1873 was to disallow it; and no appeal was taken from that order. 4. That the board of supervisors never had any jurisdiction of this claim, and the circuit court could acquire none by the appeal. The jurisdiction of the board is purely statutory; and ch. 250, Laws of 1873, strips them of all power to act upon any claim for a greater amount than the sum actually paid to the county for the certificates. *Stringham v. Supervisors*, 24 Wis., 594. If plaintiffs wished to claim the full amount of the certificates, they should have commenced by original action at common law. *Barden v. Supervisors*, 33 Wis., 451. 5. That the acts of the plaintiffs in purchasing the certificates and judgment obtained by Denniston, and taking a deed from Denniston, who had the tax title, operated as a voluntary redemption of the lands from the sales. *Smith v. Lewis*, 20 Wis., 350; Cooley on Taxation, 368. If it was not a redemption, it was a payment

of the tax, and in that case the claim was barred by sec. 30, ch. 22 of 1859, which requires such claims to be made "within two years of the payment of any tax."

COLE, J. These are cross appeals from the same judgment. The action is to recover money paid on void tax certificates. The plaintiffs are dissatisfied with the judgment because the amount recovered was less than they claimed; the county is dissatisfied because there was any recovery. The objections to any recovery will first be considered.

The first error assigned is, that the circuit court erred in holding that the county board, or that court on appeal, had jurisdiction of the action. It is said the right to present a claim to the county board for allowance, and to appeal from its decision, is purely statutory, and that the stipulation of facts shows that the claim as presented to the county board was for a greater amount than was paid the county. It is insisted that this was contrary to the provisions of ch. 250, Laws of 1873, and had the effect to deprive the board of all jurisdiction in the matter. Without, however, stopping to consider the grave objections urged against the validity of that act, it manifestly was not intended to deprive the county board of any jurisdiction which it had previously exercised in the allowance of claims. The act plainly recognized the right of the holder of the invalid certificate to present his claim for the amount paid thereon, and such presentation should doubtless be made to the county board, which has the power to allow it. The case of *Stringham v. The Board of Supervisors of Winnebago Co.*, 24 Wis., 594, to which we are referred upon this point, does not seem to have any application. Here the county board had jurisdiction to act upon the claims; and, that board having disallowed or refused to pay them, the plaintiffs had the right to an appeal.

The answer which the county was permitted to file in the

circuit court, among other defenses, sets up and relies upon the statute of limitations. By ch. 112, Laws of 1867, as amended by ch. 56, Laws of 1868, the liability of the county to refund money paid on defective tax certificates is limited, in case of an assignee of the county, to six years from the date of the assignment of the certificate. *Baker v. The Supervisors of Columbia County,* 39 Wis., 444; *Eaton v. The Supervisors of Manitowoc County,* 40 id., 668. It appears that one Denniston, through whom the plaintiffs claim, purchased the certificates of the county on the 22d of January, 1868. And it is said that no steps were taken to collect the money on these certificates, which would avoid the bar, within six years from that time. Upon the admitted facts of this case, we deem this position untenable. The record in the case shows that these claims were presented by the plaintiffs to the board in November, 1873, and were then disallowed for want of the requisite proof that the plaintiffs then owned the certificates, and because several distinct claims were included in one account. Before the next annual meeting, in 1874, the plaintiffs caused the claims to be again presented in a form to obviate the objections which had been previously taken to them by the board. But, by the presentation of the claim in 1873, an action on the certificates was really commenced; and what was done in 1874, was a continuation of that proceeding. Filing an amended account, so as to remove the objections taken to the original one, was quite like filing an amended complaint in an ordinary action. It was not the commencement of an action, but was in aid of a proceeding then pending. The board disallowed the first account because it was not properly rendered and verified, and the plaintiffs then proceeded to amend it, and supplied other evidence of ownership. In order to preserve their rights, the plaintiffs were not bound to take an appeal from the decision of the board, but might do away with the objections which were taken to the

form of the account and the sufficiency of proof. See secs. 37 and 38, ch. 13, R. S. For these reasons we hold that the bar of the statute does not apply.

It was also insisted that the purchase of the tax certificates by the plaintiffs, under the circumstances disclosed, operated as a voluntary redemption of the lands from sale, and that therefore there can be no recovery. But it is sufficient to say that the lands were not subject to taxation when sold (*Denniston v. The Unknown Owners*, 29 Wis., 351), and consequently there were and could be no taxes levied upon them. This is all we deem it necessary to say on the appeal of the county.

On their appeal, the plaintiffs insist that the circuit court erred in holding that they were entitled to recover only fifty per cent. of the face of the certificates (this being the amount paid by Denniston to the county), with interest. On what principle of law it can be successfully maintained that the county is liable to refund more money than it received on the certificates, we are at a loss to understand. It is obvious that this is an action to recover back money paid for a consideration which has wholly failed. The question therefore is, What is the measure of the recovery in such a case? It seems to us that it is the money paid the county for the certificates, together with lawful interest. It is difficult to perceive any principle of law or equity which will allow the plaintiffs to recover more than this amount. Suppose Denniston himself had brought the action: could he have recovered of the county more money than he paid? Would he have been allowed to recover money which the county had not received, and which he had not paid on these certificates? The proposition seems too plain for argument on general principles, that the county is only bound to refund the money it has received, and interest. The same rule should govern as in case of a sale of real or personal property, on failure of title, where there is an express or implied warranty. There the general rule is, where it

turns out that the vendor is not the owner, and his title fails, that the price paid by the vendee, with interest, can be recovered back in an action for money had and received. And this should be the amount of the recovery in the present case.

Nor do we think any greater liability is imposed upon the county by the statutes on the subject. The learned counsel for the plaintiffs on this point refers to the provisions of ch. 22, Laws of 1859, as authorizing a recovery for the full face of the tax certificates, whether purchased of the county at a discount or not. But we do not think this statute, or any other to which our attention was called, sustains this position. It is true, the law of 1859 provides that where it is discovered, etc., that the sale of lands for taxes is invalid, the county board or other officers of the county shall cause to be refunded the money paid on the sale. The statute is framed on the equitable principle that money paid the county on a consideration which has failed, shall be recovered back. This is in the case where the lands are bid off at the sale by an individual. But here the lands were bid in by the county, and the certificates were afterwards sold to Denniston for fifty per cent. of the face thereof. Under these circumstances there is nothing in this law which requires the county to pay the holder any greater sum than it received for the certificate, with interest. This decision is confined to the facts of this case. Whether a different rule would obtain in the cases supposed by counsel, it is unnecessary now to determine. Those cases may well be left for adjudication as they arise.

It follows from these views that the judgment must be affirmed on both appeals.

*By the Court.* — So ordered.

RYAN, C. J., took no part.

On a motion by the defendant for a rehearing, a brief was filed, signed by *John E. Glover* as attorney, and *P. L. Spooner*, of counsel. They contended: 1. That the action of the board

of supervisors on the claim of 1873, not having been appealed from, was a final disposition of that claim. The committee having reported that the claim should be disallowed, the adoption of that report was a disallowance. *Warner v. Outagamie Co.*, 19 Wis., 611. The statute requiring such claims to be verified, is merely directory, and the want of a proper verification did not affect the jurisdiction of the board. *Parker v. Grant Co.*, 1 Wis., 414. So the board might have required a better statement of the claim, or further evidence, but its failure to do so did not affect its jurisdiction. *Eaton v. Manitowoc Co.*, 40 Wis., 668. The board having jurisdiction to act upon the claim, the decision disallowing it was "final and conclusive," whether the reasons for disallowance were good or bad, if no appeal was taken within the time prescribed by law. R. S. 1858, ch. 13, sec. 43 (Tay. Stats., 303, § 57). 2. That the presentation to the board, in November, 1874, of twelve separate claims, one in favor of each of the persons who had presented their joint claim in the previous year, was the commencement of so many new actions against the county. The proceeding upon the claim of 1873 having been finally determined by the action of the board in disallowing that claim, and by the failure to appeal from that decision, how can that proceeding be regarded as pending twelve months afterwards, so that the filing of the new claims was merely a continuation or amendment of it? Besides, where a dozen persons unite as plaintiffs in an action *ex contractu*, it would be a novel exercise of the power of amendment to allow them, if it appear that they have no joint cause of action, to turn the action into twelve different actions, one in favor of each of the plaintiffs. Moreover, the record of the presentation of the claim in 1873 was brought into the case at the instance of the defendant, the plaintiffs insisting that it was " irrelevant and inadmissible;" and it is clear that the case was tried for the plaintiffs upon the theory that they were not barred by the statute of limitations because they brought their action within six years from

the *discovery* of the invalidity of the tax sales, and that such discovery was not made until the decision by this court in *Denniston v. The Unknown Owners.* 3. That the adoption by the supervisors, in 1874, of the report of a committee recommending that no action be taken on plaintiffs' claim, was not a disallowance from which an appeal could be taken, but was a refusal to act upon the claim, by which the claimants were put to the institution of a suit. R. S. 1858, ch. 13, secs. 40, 43. The right of appeal is purely statutory ( *Western Union R'y Co. v. Dickson,* 30 Wis., 389); the statute distinguishes expressly between a disallowance of a claim and a refusal to act upon it; and it makes no difference whether the reason given by the board for refusing to take action upon the claim is good in law or not.

In reply, the counsel for the plaintiffs contended, in substance: 1. That it was error to regard the claim presented in 1873 as simply a joint claim; that the demand made upon the board was in behalf of the complainants separately, according to their separate interests; and that although those separate interests were not stated in totals, yet any one could ascertain from the account, as rendered, the sum total going to each claimant, and also the claimant for each item. 2. That in determining the character of the action taken by the board on the claim of 1873, and on that of 1874, respectively, controlling importance should not be attributed to the technical language used, but rather to the reasons assigned by the board for their action; and that, tried by this test, the action of the board in 1873 was not a determination that the several claimants were not entitled to the sums demanded by them, but merely an objection to the manner in which their claims were presented; while the action in 1874 was an absolute denial that plaintiffs were entitled to receive from the county the sum which they demanded, and was therefore a disallowance of their claim.

The motion for a rehearing was denied.