Hurlbut, J.
Tliis action was brought March 12, 1907, by appellee (plaintiff below) against appellant (defendant below) to recover a judgment against defendant for work and labor performed, services rendered, and tools and supplies furnished in building a wagon road in El Paso county in 1872. The Hte Pass Wagon Eoad Company, a domestic corporation, was im *469 pleaded with, the board of commissioners, bnt it seems that the Wagon Road Company has been ignored from the very first by both plaintiff and defendant. The case was tried to the court without a jury and judgment rendered in favor of plaintiff against the board of commissioners. Both parties seem to have been dissatisfied with the judgment. Appellee has assigned cross errors. The evidence and proofs, as shown by the record, can be fairly said to establish the following facts, viz:
In 1872 the Ute Pass Wagon Road Company, a corporation, and the county of El Paso, entered into negotiations whereby the county undertook to assist the Wagon Road Company in building the road. A proposition was submitted to the people, by the commissioners, to purchase capital stock of the Wagon Road Company to the amount of $15,000.00, and issue bonds therefor. The proposition was voted upon affirmatively by the electors and the bonds were issued. One Colton filed a bid to construct the wagon road for $15,000.00, and his bid was accepted by the Wagon Road Company, after which that company appears to have faded from memory, and the county, through its commissioners, at once assumed the active management and construction of the road. It soon became apparent that the bid was too low, and the contractor would not be able to complete the road under his bid. He continued for some time in its construction and then ceased operations, whereupon the commissioners employed plaintiff to complete the construction of the road, and agreed to pay him therefor. The plaintiff completed the road to the satisfaction of the commissioners and their engineer. The commissioners, however, failed to pay *470 him anything on account of the services rendered. Shortly after the completion of the road plaintiff filed his claim against the county with the commissioners.
There is scarcely any conflict in the evidence. However, all issues of fact were resolved in favdr of the plaintiff, and we are hound by the findings of the trial court to the same extent as though the facts had been passed upon by a jury.
At the trial we think some evidence was admitted which should have been excluded, but at the same time we are satisfied that the evidence and proof which were properly admitted amply support the findings and judgment of the trial court.
The determination of but one proposition presented by the record will be decisive of the rights of the respective parties to this appeal, and in our judgment it will not be necessary to discuss at length any other issues argued in the briefs. This proposition is presented'by appellant’s tenth assignment of error, which challenges the ruling of the trial court in holding that the claim was not barred by the statute of limitations.
We are called upon to decide whether or not the filing of a claim against the county with the hoard of county commissioners, followed up by reasonable diligence on the part of claimant to have the claim considered and acted upon by the board will arrest the running of the general statute of limitations until the board had allowed or rejected the claim. In passing upon this question we can derive no assistance from our own appellate courts, as our attention has not been called to any’ decision bearing upon the proposition, and we know of none. How *471 ever, the appellate courts of many other states have decided various phases of the question, and we find some conflict in the- conelusipns reached by them, though the great weight of authority seems to establish the doctrine that the filing of such claim with the commissioners arrests the running of the general statute of limitations against the claim. In the case of Marsh v. Commissioners, 42 Wis. 355, the claimant filed his account against the county for money paid on void tax certificates. The county pleaded the defense of the six years statute of limitations. The court held that the presentation of the claim to the commissioners was equivalent to the beginning of an action, the court saying: “But, by the presentation of the claim in 1873, an action on the certificates was really commenced, and what was done in 1874 was a continuation of that proceeding.” In Cox v. State, 144 N. Y. 396, the claimant filed an account against the state with a body specially created by the legislature to consider the same. The board discussed the claim but the same was “laid upon the table,” where it remained for about sixteen years, after which period claimant again pressed his demand for payment, before another board subsequently created by the legislature, which succeeded to the duty imposed upon the first board of considering the claim. The statute of limitations was pleaded by the state. The court says: ' “The jurisdiction to examine and report was not lost by failure to comply with the direction. The power conferred imposed a duty which rested upon them until performed. * * . * Thus it appears that within a year after the claim accrued it was presented to the tribunal constituted by the state to *472 hear and examine into its merits. This was equivalent to the commencement of an action between citizens, which suspended the operation of the statute of limitations upon the claim, and unless something occurred afterwards to set the statute running the cause of action is not barred.”
In County v. Stuart, Buchanan & Co., 28 Grattan (Va.) 526, plaintiff presented to .the county board, and attempted to have filed, his claim against the county, within the statutory period. The commissioners refused to permit the claim to be filed, or to take any action thereon, and adjourned. A short time after the board had adjourned plaintiff again- presented his claim to the county for allowance and payment, but at this time the statute of limitations had run against the claim. Upon suit brought the county pleaded the statute of limitations, but the court would not permit it to invoke the benefit thereof, saying: “This order is the foundation of a valid claim against the county of Dinwiddie, if the same was presented within the period of the statute of limitations. In a case resting upon a claim to be settled by the board of supervisors it must be conceded that the time of the commencement of the action is the date of the presentation of the claim before the board.”
We could cite other authorities holding to the rule adopted by Wisconsin, New York and Virginia, but deem it unnecessary to extend the list.
It seems to be the well, established rule in all jurisdictions that the commencement of an action within the statutory period to enforce a claim or demand arrests the running of the general statute of limitations against the same. Appellant’s coun *473 sel contends against the doctrine announced in the above cited cases, and cites in support of his contention two cases in our supreme 'court: Corning v. Ryan, 3 Colo. 525; Morris v. Clark, 10 Colo. 216. We might add the case of Altvater v. Bank, 45 Colo. 528. In examining these cases, we find they are based upon claims filed in the probate court, against estates. But none of the cases goes further than to hold that the mere filing of a claim against an estate does not arrest the running of the general statute of limitations against the claim. However, we notice one significant phrase used by the court in Morris v. Clark, supra, to-wit: “The filing of a claim, which must be regarded as the commencement of a suit, was not within the two years limit fixed by the statute. ’ ’ It- would not be profitable to speculate on what the ruling of the supreme court might be where the statute of limitations was pleaded by an estate at the trial, in a case where the claim was filed in the probate court "against the estate within the statutory period and reasonable diligence ivas used by the claimant to bring the matter to trial, but, before hearing, the bar of the statute had intervened. Such a situation would be another question for consideration by the court. In the case at bar we do not feel called upon to decide as an inflexible rule of law that the mere filing of a claim against a county with the board of county commissioners arrests the running of the general statute of limitations against the claim, and we do not so hold. What we do decide is, that where a claim against a county is filed with the board within the statutory period, the board, in an action upon the claim after the bar has attached, will not be permitted to invoke the *474 aid of the statute of limitations, where it appears that after the claim was filed, the claimant prosecuted the same with reasonable diligence, and made constant effort to have the commissioners consider the claim on its merits, and either approve or disapprove the same. In su'ch a case the running of the general statute of limitations will be arrested until the board has either allowed or rejected the claim. It' satisfactorily appears here, from the record, that from the time the claim was filed with the board in 1872 until it was rejected on March 4, 1907, the plaintiff had persistently and constantly pressed his demand upon the attention of the commissioners, both in board meetings and in vacation, and had earnestly insisted that they adjust and pay his claim. The claim seems to have been ever present before the board, and in no sense could it be designated as a stale or dormant claim. It further appears that • during this period the board had repeatedly and constantly considered plaintiff’s claim, and had discussed the same time and again with plaintiff and other citizens of the county; had never at any time disputed the claim or the justness of the demand; had repeatedly stated to plaintiff and others that the reason the claim was not allowed and paid was because of the lack of funds; that when the road bonds were sold the claim would be paid; that the claim was as good as the bank and would be paid, and other statements of similar import. In fact the board, while in session as well as in vacation, appeared ready and willing at all times to talk to plaintiff about his claim, but evinced a disposition to avoid a frank consideration of the same on its merits. This action of the board in these respects, con *475 sidered in connection with the character of conversations had with plaintiff, would certainly justify him in the belief he entertained that his claim would eventually be paid and that no action thereon was necessary. It can be well said that it had a tendency to lull him into a feeling of security and generate a hope that he would ultimately secure a settlement and payment of his claim through the commissioners without legal proceedings.
In this connection we may say that under our view of the evidence the charge of laches against plaintiff cannot be sustained, unless it can be said that the laches consisted in his failure to commence an action on the claim, after waiting a reasonable time for the board to act thereon. This contention, however, can be met by a defense which seems to be well recognized and supported by the authorities. It is clearly stated in 25 Cyc. 1325; viz: “A plaintiff may meet the defense of the statute of limitations by showing that, before the time fixed by statute for the bar, defendant, by his course of conduct, led plaintiff to believe that a suit to enforce his rights would be unnecessary, and thereby lulled him into a feeling of security.” The text is supported by many credible authorities. Upon this phase of the case, and in the light of the evidence concerning the actions of the board toward plaintiff, we hold that the statute of limitations is not available to that body for the purpose of defeating plaintiff’s action.
Appellant’s counsel say that, at any time prior to 1887, appellee could have brought suit against the county upon his claim, without first having made a demand upon the county for payment. It is not necessary to decide' that question, but, if it were, the *476 negative of counsel’s proposition is supported by strong and well reasoned cases in other stsites. The supreme court of North Carolina in the case of Alexander v. Commissioners, 67 N. C. 330, held that a previous demand was necessary to sustain an action against a county upon a claim asserted against it, and supported the opinion with persuasive and convincing reasoning. Whatever the law might be as to this question, it might be said in answer to counsel’s suggestion that, at any board meeting, the commissioners conld have set the statute in motion by allowing or rejecting the claim. Plaintiff, by any action of his, could not have compelled the county commissioners to formally consider and pass on his claim. But the commissioners, having original jurisdiction to consider and determine the claim, and if necessary swear witnesses concerning its validity, could, at any time during their sessions, have allowed or rejected the claim, without any previous notice to plaintiff. It was the duty of the commis-' sioners within a reasonable time to have considered the claim and either allowed or rejected it. If, after the claim was filed, plaintiff had taken no steps towards prosecuting it to a hearing and action before the board, and the commissioners had said or done nothing concerning the claim, and the claim had consequently lain dormant for years, then the application of the statute of limitations to such a situktion would have raised a different question for consideration than the one presented by this record. The great weight of authority in this country holds that, in passing upon claims urged against a county, the board of commissioners act judicially, or at least in a quasi judicial capacity, and.their allowance and *477 settlement have the force of judgments and are binding unless reversed or vacated in a manner provided by law. 11 Cyc. 595. A full and rather exhaustive, discussion sustaining the proposition may be found in Brown v. Otoe County, 6 Neb. 115.
A number of other matters are discussed in the briefs and show painstaking research by counsel on both sides, but we are unable to discover from the record any proceeding upon which could be predicated fatal or reversible error. Much space in the briefs has been consumed in debating the question of trust relationship between defendant and the Wagon Eoad Company. We are unable to see that this question has any bearing upon the case. Granting that a trust was well pleaded, it was squarely put in issue by the answer, and on examination of the testimony we find that it completely fails to establish a trust of any character. It certainly cannot be contended that the mere purchase of stock in a corporation creates a trust between the corporation and'the purchaser. Nor can a temporary supervision of the work of a corporation by the purchaser establish such a relationship. Moreover the rights of plaintiff under his contract could in no way be affected by any trust existing between defendant and the Wagon Eoad Company. If the company was indebted to plaintiff at all such indebtedness arose under a contract between them. As we read the record, not a word can be found therein showing that plaintiff ever had any conversation with any officer or representative of the Wagon Eoad Company respecting the building of the road.
The court properly refused to allow interest on the claim. Interest in this state is a creature of *478 statute and regulated thereby. It is only recover-' able in the absence of contract in the cases enumerated in the statute. Denver, South Park & Pacific R. R. Co. v. Conaway, 8 Colo. 1; Hawley v. Barker, 5 Colo. 118. The case at bar does not come within the statute as to allowance of interest. The claim) was unliquidated.
Decided February 13, A. D. 1912.
Eehearing denied April 8, A. D. 1912.
We find no reversible error in this record, and the judgment will be affirmed.

Judgment affirmed.