PHILIP CORKINGS, Appellant, v. THE STATE OF NEW YORK, Respondent.

Under the provision of the State Constitution (Art. 7, § 14), prohibiting the auditing or payment of a claim against the State, which as against citizens would be barred by lapse of time, excepting " claims duly presented within the time allowed by law, and prosecuted with due diligence from the time of such presentment," to avoid the bar of time it is not necessary to show that presentation has been made to the board of audit or its successor, the board of claims. Presentment to the legislature or to any officer or body of officers having jurisdiction to pay, allow or act upon the claim is sufficient, if after such presentation the claim be prosecuted with reasonable diligence.

In 1873, plaintiff having entered into contracts with the State for work upon the Erie canal made deposits of money with the State treasurer to secure the performance of the contracts as required by the act of 1873 (Chap. 766, Laws of 1873). Prior to August, 1874, he fully performed said contracts. His work was duly accepted and approved by the proper State officers, and a final accounting was had August 10, 1874. Before that time the State treasurer had deposited this money with a bank which subsequently became insolvent, and the money was lost. In 1876 the legislature, in the supply bill (Chap. 193, Laws of 1876), appropriated money to refund to plaintiff the money so lost, to be paid by the treasurer upon the warrant of the State comptroller. Plaintiff applied to the State treasurer for the certificate, but was refused. In 1878, the legislature again made an appropriation to pay the claim, but the State treasurer again refused a certificate. The claim was also presented to the State treasurer and State engineer, but they refused to recognize its validity or take any steps for its payment. After the passage of the act of 1876 (Chap. 425, Laws of 1876) authorizing the canal board to settle with contractors and pay any sums due on contracts, in 1877 and 1878, plaintiff presented petitions to the canal board asking to have the money refunded, which were never definitely acted upon. Plaintiff filed a claim with the board of audit, May 13, 1882. That board found that, more than six years having elapsed between the time the money was due and payable, and the time the claim was so filed, it was barred by the statute of limitations. Held (DANFORTH and MILLER, JJ., dissenting) error; that the money was not deposited to be repaid only upon special demand within the meaning of the Code of Civil Procedure (§ 410, subd. 2), and the limitation of time was to be computed from August 10, 1874; but that the claim was duly presented within the meaning of the Constitution, and prosecuted with reasonable diligence; that the money having been lost and so not in the State treasury, could not be refunded according to the provisions of the act of 1873, upon the certificate of the State

engineer and canal commissioner, but only after some new legislative provision for its repayment had been made, and therefore that plaintiff could not be charged with default or omission in not procuring such certificate.

Also *held* (DANFORTH and MILLER, JJ., dissenting), that the action of the legislature in 1876 and 1878 was a full recognition of the liability of the State, such as between individuals would have defeated the running of any prior time as a bar, and the same effect must be given to its acts as against the State ; and that, therefore, the claim was not barred by any limitation of time when the claim was presented to the board of audit.

Where to a just claim against the State, the only defense interposed is the statute of limitations, it should at least establish that defense both on the law and the facts with reasonable clearness and certainty.

(Argued April 27, 1885 ; decided October 6, 1885.)

APPEAL from decision of the board of claims, made September 10, 1884, which rejected and dismissed a claim presented by the appellant.

The material facts are stated in the prevailing opinion.

*Martin A. Knapp* for appellant. As between citizens, this claim would not be barred by lapse of time. (Laws of 1876, chap. 444 ; Code Civ. Proc., § 410.) Where there is a deposit, as distinguished from a loan, the statute does not run until a demand is made. (*Boughton* v. *Flint*, 74 N. Y. 476 ; *Payne* v. *Gardiner*, 29 id. 146.) Where there is an express trust, the statute of limitations would not begin to run until an open repudiation of the trust on the part of the trustee, brought to the knowledge of the *cestui que trust.* The mere retention of the money unaccompanied by such a repudiation is not enough. (*Kane* v. *Bloodgood*, 7 Johns. Ch. 90.) An admission of the existence of a debt, although coupled with the assertion that a counter-claim exists sufficient to defeat it, will avoid the bar of the statute. (*Mosher* v. *Hubbard*, 13 Johns. 510 ; *Dean* v. *Pitts*, 10 id. 35.)

*D. O'Brien*, attorney-general, for respondent. The moneys deposited by the claimant as security for the faithful performance of his contract, having been lost by the failure and in-

solvency of the Farmers and Mechanics' Bank of Rochester, where the moneys were deposited by the State treasurer, the State was discharged from all liability to refund them. (*Lewis* v. *State*, 96 N. Y. 71.) The State cannot be held to any greater measure of liability for these deposits than is imposed by law upon an ordinary trustee in caring for the trust funds committed to his charge. (Perry on Trusts, § 443; *In re Safford*, 11 Barb. 354.) The claim of the appellant was barred by the statute of limitations. (Laws of 1876, chap. 444; Const., § 14, art. 7.)

EARL, J. On the 19th day of August, 1873, the plaintiff entered into two contracts with the State for work upon the Erie canal, and deposited two sums of money amounting to $1,800 as security for the performance of the contracts under chapter 766 of the Laws of 1873. That chapter (page 1170) provided that "upon the entering into said contract the bonds or stocks or money required by the commissioners as security for the entering into said contract, together with such additional securities as they may require, may be held as security for the completion of the work, and shall be deposited with the treasurer as a special trust, to be returned by him to the contractor with such further sums as he may have realized for the use thereof, when the commissioner in charge and the State engineer shall certify that the contractor has fully completed his contract, and that the State has no further claim upon such funds."

The board of claims found, that prior to August 1, 1874, the plaintiff duly performed and completed both contracts in full compliance with their terms and provisions; that his work was in all things duly accepted and approved by the officers and agents of the State; that a final accounting thereof was made on or about August 10, 1874; that by the laws of the State, it was the duty of the officers and agents of the State upon such final completion and settlement of the contracts, to repay to the plaintiff the two sums of money deposited, with interest at the rate of six per cent from August 10, 1874; that no part of the

principal or interest has ever been paid to him; that the $1,800 became due and payable August 10; that plaintiff's claim was filed with the State board of audit May 13, 1882, and that there was no proof that he ever made any claim for the payment of his deposit prior to that date; and the board found that more than six years had elapsed between the time when the money was due and payable by the State to the plaintiff and the time when the claim was so filed with the State board of audit, and therefore decided that the claim had not been "duly presented within the time allowed by law, and prosecuted with due diligence," and therefore was barred by the statute of limitations, and on that ground alone defeated the plaintiff.

The sole question for our determination is, whether plaintiff's claim was barred by lapse of time; and whether it was or not, depends upon the effect to be given in this case, to section 14 of article 7 of the Constitution, which was adopted at the election in the fall of 1874, after the claim became due, and which reads as follows: "Neither the legislature, canal board, canal appraisers, nor any person or persons acting in behalf of the State shall audit, allow or pay any claim which as between citizens of the State would be barred by lapse of time. The limitation of existing claims shall begin to run from the adoption of this section; but this provision shall not be construed to revive claims already barred by existing statutes, nor to repeal any statute fixing the time within which claims shall be presented or allowed, nor shall it extend to any claims duly presented within the time allowed by law and prosecuted with due diligence from the time of such presentment." The object of this section was to prevent the allowance against the State of stale claims which had long lain dormant. But as the State could not be sued, it was not intended to bar claims which had been duly presented for payment or allowance. To avoid the bar of time, it was not necessary that the presentation should be made to the board of audit, or to its successor, the board of claims. All either of these boards could do was to audit or allow claims. They could not pay them, but the legislature would still have to appropriate money for their payment and

thus approve them.   The presentment of a claim may be made
to the legislature which has jurisdiction in some form over all
claims against the State ; or it may be made to any officer or
body of officers having jurisdiction to pay, allow or act upon
the claim.   And the claim may not be presented and then per-
mitted to lie dormant, but must be prosecuted with reasonable
diligence.   It must be a live claim which the claimant has by
reasonable and suitable efforts diligently sought to have allowed
and paid, else time interposes a bar which will defeat it as it
could be defeated if presented against an individual.

This money was payable upon demand on the 10th day of
August, 1874.   The plaintiff had the right to make the demand
on that day, and hence, if this were an action between individ-
uals, the limitation of time would have to be computed from
that day.   These moneys were not deposited to be repaid only
upon a special demand within the meaning of the second sub-
division of section 410 of the Code.

But we think this claim was duly presented within the mean-
ing of the constitutional provision referred to and was prose-
cuted with due diligence.   Some time before August 10, 1874,
the State treasurer deposited this money with the Farmers and
Mechanics' Bank of Rochester, together with other similar
funds, and subsequently the bank became insolvent and the
money was lost.   This loss did not absolve the State from its
liability to repay the money to the plaintiff.   He deposited the
money with it when the money was paid into the hands of its
treasurer, who was not his agent but a State agent, acting for
and on its behalf.   It cannot allege the loss by the misconduct
or default of its treasurer as a defense to the payment of the
money according to its contract.

But the money having been lost and not being in the State
treasury nor under the control nor at the disposal of the treas-
urer, it could not be refunded, according to the provisions of
the act of 1873, upon the certificate of the State engineer and
canal commissioner, but only after some legislative action
making new provision for its re-payment. So the plaintiff could
be charged with no default or omission in not procuring the

certificate of the two officers named, or placed at a disadvantage on that account.

On the 1st day of May, 1876, the legislature, in the supply bill of that year (chap. 193), enacted as follows : " The sum of $22,800, or so much thereof as may be necessary, is hereby appropriated to refund to the contractors the amounts deposited by them in trust with the late treasurer, in pursuance of acts chapter 850 of the Laws of 1872 and chapter 766 of the Laws of 1873, with such equitable interest as may be due thereon, which deposits were loaned by said treasurer to the Farmers and Mechanics' Bank of Rochester and the Bank of Brockport, and are now unavailable in consequence of the failure of said banks. The aforesaid appropriation shall be paid to the contractors on the warrant of the comptroller upon the treasurer certifying the amount to which such contractors are severally entitled." The plaintiff applied to the State treasurer for the certificate contemplated by this provision and he refused to give it.

On the 13th day of May, 1878, the legislature in the supply bill of that year enacted as follows : " The unexpended balance of the appropriation of $22,800, made in chapter 193 of the Laws of 1876, to refund to contractors the amounts deposited by them in trust with the late treasurer in pursuance of chapter 850 of the Laws of 1872, and chapter 766 of the Laws of 1873, with such equitable interest as may be due thereon, being the sum of $7,990.85, is hereby reappropriated for the same purpose." After this enactment the State treasurer again refused to give his certificate.

In the winter of 1881 the legislature again passed a bill appropriating the unexpended balance of the appropriation of 1876, " to refund to contractors the amounts deposited by them in trust with the late treasurer in pursuance of chapter 850 of the Laws of 1872, and chapter 766 of the Laws of 1873, with such equitable interest as may be due them," but the governor vetoed the bill.

It has never been disputed that plaintiff's claim is one of the claims provided for or attempted to be provided for by these enactments. It must, we think, be presumed that this legisla-

tive action was invoked at least in part by the plaintiff or by some one in his behalf, and that his claim was presented or in some way before the legislature. It would be against common experience and observation to suppose that the legislature passed these acts without being moved thereto by the parties interested or by some person or persons acting in their behalf and for their benefit. This was, therefore, a live claim, neither stale nor dormant, but was prosecuted before the only body that could give the plaintiff effective and complete relief with reasonable persistence and diligence.

So, too, this claim was presented to the State treasurer and State engineer and they refused to recognize its validity or to take any steps for its payment.

In May, 1876, the legislature passed an act, chapter 425 of the laws of that year, section 2 of which is as follows : " The canal board is hereby authorized to settle with any contractor on such terms as to the said board may seem just and reasonable, provided that the sum paid to any contractor shall in no instance exceed the amount due to him by the terms of his contract," and an appropriation was made to carry out the provisions of the section. These two sums were due to the plaintiff by virtue of his contract, and hence that act gave the canal board jurisdiction to act upon this claim, and they subsequently took jurisdiction of this and other similar claims. On the 6th day of June, 1877, the plaintiff presented his petition to the canal board asking to have his money refunded ; and the petition was referred to the attorney-general, who never reported in the matter. In April, 1878, the same or another petition was presented to the canal board and was referred to the State treasurer, who in June thereafter made his report, which was laid on the table and ordered printed. In September, 1878, the petition was again presented to the canal board and referred to the attorney-general, who made a favorable report thereon in February, 1879 ; but his report was referred to the State engineer. Subsequently, in March, 1879, the superintendent of public works and the attorney-general were added to the committee, and thereafter the committee made,

as must be inferred, an unfavorable report to the board, which seems never to have been acted on by the board. During the several years this claim was pending before the canal board and receiving laborious attention, none of the members of that board, some of them distinguished for legal ability, all of them presumably familiar with the laws defining the jurisdiction of the board, and many of them having great experience in the practical affairs of the board, discovered what is now claimed, that after all the board did not have jurisdiction of the claim. The plaintiff having been led by the action of the law officers of the State and of all the State officers having any relation to his claim to repose in the belief that the canal board had jurisdiction to act upon his claim, should not now be prejudiced by a denial of that jurisdiction based upon a narrow or doubtful construction of the act of 1876. Hence it cannot be denied that his claim was prosecuted with reasonable diligence before the canal board.

Thus the plaintiff first presented his claim before the legislature, the only body that could give him relief, and attempted to procure payment thereof under the acts of 1876 and 1878. Failing in that he prosecuted his claim under the act of 1876 before the canal board of which the comptroller, treasurer State engineer and canal commissioners were members. Failing there, he again attempted legislation in 1881, and failing there in consequence of the governor's veto, he filed his claim before the board of audit, from which it was transferred to the board of claims, and there he failed because his claim had not been " duly presented within the time allowed by law and prosecuted with due diligence," and we think without sufficient reasons. The claim never became stale ; was not allowed to sleep for any considerable time ; was constantly pressed upon the attention of the State government in some way, and thus came to the attention of every body of men and every state officer that had any possible relation to it ; and hence it never came under the condemnation of the constitutional provision referred to.

But we may go still further and hold that this claim would

not have been barred if it had been held against an individual. According to this record, the plaintiff completely performed his contracts with the State and his work was duly accepted and approved by the State officers and agents, and he was entitled to have his money refunded. But it had been lost through the act of a State officer and hence the legislature passed the acts of 1876 and 1878 fully recognizing its liability for the money and providing for its payment. Its recognition of liability was unqualified and accompanied with no conditions. The money to pay the claim was appropriated and it was to be paid upon the certificate of the treasurer and the warrant of the comptroller. If an individual owing this claim had at the same date recognized his liability and provided money for the payment of the claim in precisely the same way, the running of any prior time as a bar to the claim would have been defeated (*De Freest* v. *Warner*, 98 N. Y. 217) ; and the same effect must be given to the acts referred to against the State (*People* v. *Denison*, 80 N. Y. 656); and hence when this claim was filed with the board of audit in 1882 it was not barred by any limitation of time.

When the State, to a just claim, such as this is found to be, has no better or other defense than the statute of limitations, it should at least, both upon the law and the facts, establish that defense with reasonable clearness and certainty. This it failed to do, and therefore the decision of the board of claims should be reversed and a new trial ordered, with costs to abide event.

DANFORTH, J. (dissenting). It is said to be inherent in the nature of sovereignty not to be amenable to the suit of any private person without its own consent. This immunity is justified, not only by the impossibility of enforcing recoveries against the State, but the difficulty of guarding against fraudulent claims and embarrassing stale controversies, and also by the presumption that it never would be its interest or inclination to withhold a just debt from any citizen. The usage has been to do justice to the citizen in its dealings with him and his property. At first, upon petition addressed to the legisla-

ture, it provided either for direct payment of his demand, or a special tribunal to which it might be submitted, and afterward a board of audit (Laws of 1876, chap. 444), with power to hear all private claims against the State (except those then heard by the canal appraisers), and allow such as should equitably be paid to the claimants; and lastly (Laws of 1883, chap. 205), in place of the appraisers and board of audit, the board from whose decision this appeal has been taken. All these bodies acted under such limitations as the legislature imposed. But the legislature itself was subject to the people, and in 1874 (November 3), it was provided by amendment to the Constitution (Art. 7, § 14), that " neither the legislature, canal board, canal appraisers, nor any person or persons acting in behalf of the State, shall audit, allow, or pay any claim which, as between citizens of the State, would be barred by lapse of time. The limitation of existing claims shall begin to run from the adoption of this section ; but this provision shall not be construed to revive claims already barred by existing statutes, nor to repeal any statute fixing the time within which claims shall be presented or allowed, nor shall it extend to any claims duly presented within the time allowed by law, and prosecuted with due diligence from the time of such presentment. But if the claimant shall be under legal disability, the claim may be presented within two years after such disability is removed." In view of these conditions we are required to uphold the conclusion of the board of claims, and if, in the result, there is seeming hardship, it is apparent the claimant alone is accountable for the delay which leads to the denial of his demand.

*First.* The statute (Laws of 1873, chap. 766, p. 1170), which required security from the contractor, declared that it should be deposited with the State treasurer as a special trust, to be, returned " when the commissioner in charge and the State engineer should certify that the contractor had completed his contract and the State had no further claim upon the security." The same condition is contained in the act of 1872 (Laws of 1872, chap. 850, p. 2023), to which also the claimant refers. There is no suggestion in the statement of claim, nor

evidence that these officers were ever asked for a certificate or in any way to act in the matter.

*Second.* The legislature passed several laws, now claimed by the appellant to include the claims in question; first in 1876 (Chap. 193, p. 194), and again in 1878 (Chap. 252, p. 322). By the first act a sum not exceeding $22,800 was appropriated to refund contractors the amounts deposited by them in pursuance of chapter 850 of the Laws of 1872, and chapter 876 of the Laws of 1873 (*supra*), to be paid to the contractors on the warrant of the comptroller upon the treasurer, certifying the amount to which the contractor was entitled. By the other $7,991.85 — being the unexpended balance of the former sum — was reappropriated for the same purpose.

The certificate of the treasurer was not obtained by this claimant, nor any proceedings instituted to compel it. In either case had the demand been made of the officers named in the foregoing statutes, and unreasonably refused, although the States could not be sued, each one of them was amenable for any act or omission of duty which he owed to the claimant, and in a proper case, he would be entitled to the writ of *mandamus*. But if for any reason the power of the judicial tribunals was insufficient, the claimant might still rely upon the justice of the State. From the moment of the completion of the work, the contractor had a just claim against it, and the remedy, by appeal to the legislature, was open to him. In a case (*Lord* v. *Thomas*, 64 N. Y. 107) involving the same principle, the court, in denying the writ of injunction against a State officer through whose interference the plaintiff's contract was put an end to, said: "This remedy" (petition to the legislature) "is the only one provided in such case, and this is known to the party contracting with the State, and the courts cannot say that it is not certain, reasonable and adequate." The claim now in question never was presented to the legislature.

*Third.* In June, 1876, the board of audit was established, with jurisdiction, but the claim was not presented to it until after the expiration of more than six years from the time the cause of action had accrued, and when, as between citizens, it

would have been barred by lapse of time. The claimant's counsel argues that until by the statute of 1876 (*supra*), that board was organized, an absolute disability existed. But the claimant was under no disability. As we have seen, he might at least have petitioned the legislature. The Constitution prohibits even that body from paying or allowing the claim after lapse of time. He could assert his rights no better before the board of audit than before the legislature. It had only a delegated power " to hear and allow such sums as it shall consider should equitably be paid by the State to the claimants." Payment was still a matter of grace on the part of the State after report made to it. (*Lord v. Thomas, supra;* Laws of 1876, *supra.*) It could no more be enforced after a hearing than before. Nor would it alter the case if it were otherwise. The want of a tribunal does not hinder time from running. The claim was existing and due when the constitutional provision took effect. As to it, therefore, the limitation began to run November 3, 1874, and was completed November 4, 1880, or two years before the claim was presented to the board of audit, unless as the appellant contends, it is within the saving clause which declares that the provision shall not " extend to any claims duly presented within the time allowed by law, and prosecuted with due diligence from the time of such presentment." The foundation for this assertion is laid in the petition to the board of audit, by the statement that the claim " was presented to the canal board several years ago, but at what particular time " the petitioner " cannot state, and payment requested, but no payment or award has ever been made, nor final action taken in reference thereto."

The proof is that on June 6, 1877, Corkings presented a petition to that board, stating that the contracts had been completed and settled for, and asking " that the security retained by the State for " their performance be returned to him ; that a similar one was presented April 23, 1878, and again September 7, 1878. Action was had upon these petitions from time to time, and reports made concerning the matters involved, the last, March 13, 1879, showing that the sums paid the petitioner

largely exceeded the contract price, and that the work was not properly performed, but no definite action was had. The petitions were neither granted nor rejected. Upon the evidence, of which this is a summary, the board of claims were asked by the claimant to find "that the claims for the amounts so deposited were duly presented within the time allowed by law, and were prosecuted with due diligence from the time of such presentment." They refused to do so and found the contrary, as above stated. This was probably because they deemed those proceedings absolutely unimportant upon any issue before them. Such too was the contention of the learned attorney-general. Yet in view of these facts, the appellant fails to cite any statute or authority showing the jurisdiction of the canal board; if they had no jurisdiction, then clearly what was done by them, or omitted to be done, was of no moment, nor was it important that their action was invoked. If on the other hand they had jurisdiction, then it may be conceded that so far as appears in this case, the restraining words of the Constitution (*supra*) do not apply to that proceeding, and the claimant would be entitled to their determination, and if in his favor, to such benefit (if any) as under the statute giving that jurisdiction, is prescribed for it. (Constitution, art. 5, § 6.) But even in such a case the saving words are limited. The claim must not only be duly presented within the time allowed by law, and prosecuted with due diligence, but it must be prosecuted with due diligence from the time of such presentment, thus introducing as to claims against the State a rule different from that prevailing in actions between citizens. In the latter cases such an action, once commenced, suspends the running of time, however great the delay in bringing it to a conclusion. (*Evans* v. *Cleveland*, 72 N. Y. 486.) But the provision in question requires not only a timely commencement, but a diligent and continued prosecution of a claim against the State. Here, in any view, was a suspension of proceedings from March, 1879, to May, 1882 — more than three years. This need not be dwelt upon. It is only another feature, justifying if need be the refusal of the board to

find that the claim had been diligently prosecuted from the time of its presentment to the canal board. Our decision need not be put on that ground. It may be put on the broader ground above mentioned, that the saving words apply only to the tribunal and the proceedings in which the claim has been presented or is being prosecuted, and enables that tribunal only to complete the work it has undertaken. Neither that presentment nor those proceedings avail the claimant in any manner when before another tribunal. There, as to then existing claims, limitation must be deemed to run from the time of the adoption of the provision (*supra*), and if it has expired, neither the legislature, nor other board or person can audit or allow, or pay.

That was the case below. The constitutional provision was adopted in November, 1874. The claim accrued before that time and was then existing. It was not presented to the board of audit until May, 1882. It might have been in June, 1876. Instead of appealing to that tribunal, the claim was presented to the canal board in 1877, and, as we have seen, in following years. If both boards had jurisdiction, the plaintiff must be deemed to have made his election, and can with no reason complain that the State did not sooner provide a body to hear him, nor can he with any reason ask for such a construction of the Constitution as will permit him not only to evade its directions, but have another hearing before another tribunal upon the ground that he had first petitioned the other.

I think the board of claims could come to no other conclusion than that the constitutional prohibition applied.

The appeal should therefore fail, and the judgment be affirmed, with costs.

RUGER, Ch. J., RAPALLO and FINCH, JJ., concur with EARL, J.; MILLER, J., concurs with DANFORTH, J.; ANDREWS, J., does not vote.

Judgment reversed.