# Woodruff *v.* Winston, adm'r, &c.

### *Contest of Claim filed against Insolvent Estate.*

1. *Statement of claim filed.*—When a demand is filed as a claim against an insolvent estate, it is sufficient if the statement, taken in connection with the accompanying affidavit, shows a *prima facie* existing liability on the part of the estate to the person in whose favor the claim is asserted.

2. *Verification of claim; objections to.*—An objection to the sufficiency of the affidavit verifying a claim can not be raised for the first time in this court, since the claimant would thereby be deprived of the right and opportunity to cure the defect by amendment.

3. *Time of filing claim; objections to.*—When a claim against an insolvent estate is contested, but no objection is raised in the Probate Court to the time within which it was filed, the objection can not be raised in this court, to prevent a reversal of the judgment rejecting the claim, that the record does not show it was filed within nine months after the declaration of insolvency.

4. *Statute of limitations as bar to claim.*—If the statute of limitations is available as a bar to a claim filed against an insolvent estate, the contestant must show that, after the maturity of the debt, the statutory bar was complete before the claim was filed; and when that does not appear to have been done, the statute can not be invoked in this court, in support of an erroneous decree rejecting the claim.

5. *Proof of contested claim.*—When a claim filed against an insolvent estate is contested on grounds denying the existence of the asserted liability, the burden of proof is on the claimant, and his affidavit verifying the claim is not evidence of the liability; but positive certainty in the proof is not required, it being sufficient if the evidence, direct and circumstantial, reasonably satisfies the mind of the existence of facts constituting the indebtedness or liability claimed.

6. *Same; liability of purchaser of property at sheriff's sale.*—A claim against the insolvent estate of the deceased purchaser of property at a sheriff's sale under execution, for the amount of his purchases, is sufficiently proved by the memorandum of the sale, in the handwriting of the sheriff's clerk, stating the different articles bought by him, with the price of each; and an indorsement thereon by the purchaser, on subsequent presentment to him, to the effect that it was his purchases at the sale. The fact that he did not take possession of the property knocked down to him, as shown by the memorandum, is immaterial, when it is shown that he intended his purchases for the benefit of the wife of the defendant in execution; and the price of real estate, included in his purchases, is recoverable equally with the price of personal property, when the statute of frauds is not invoked by plea or objection.

7. *Admissibility of party's own declarations.*—A party's own declarations, made in the absence of his adversary, are not competent evidence for him; nor can he qualify or control declarations or admissions made at one time, by proof of counter declarations made at a subsequent time.

APPEAL from the Probate Court of Sumter.

In the matter of the insolvent estate of Turner Reavis, de-

ceased, on the trial of a contest as to the validity of a claim filed against said estate, in the name of "J. A. Mooring, trustee." The record does not show when said Reavis died, nor when his estate was declared insolvent. The claim was filed on the 17th March, 1874, and was thus described in its entry on the book of claims in the office of the probate judge : "Date—January 13, 14, 15, 1868. Description of claim—*Account McMahon's sale.* On whose account filed—*Jonathan Bliss.* To whom payable—*J. A. Mooring, trustee.* When due—*In a reasonable time after sale.* Amount—$1,696.60." The claim itself, as filed, was in these words : "T. Reavis bo't at sheriff's sale, Jan. 13, 14, 15, 1868, made upon executions in favor of J. Bliss, J. A. Mooring (trustee), Vandegrafte (2), Dan. G. Rencher, and Amos Travis *vs.* T. D. Bell and R. G. McMahon, one or both; on his agreement to pay for the same, at the prices set down, within a reasonable time thereafter, either to the then sheriff, or to the said Mooring, as trustee for said creditors, to-wit:" specifying a "frame house, subject to $500 exemption to Bell, $7.10; brick-yard west of town, $31.25; piano, $100 ;" horses, mules, wagon, buggy, &c., with the price of each annexed; in all aggregating $1,696.60. Appended to this claim was an affidavit by J. Bliss, made before a justice of the peace, on the 8th June, 1873, to this effect: "that Turner Reavis, deceased, at the dates above named, and at the sale named (usually called the McMahon sale), bid off the said several articles above, at the price above, on an agreement to pay for them, in some reasonable time then ensuing, either to the then sheriff making the sale, or to said James Mooring, as trustee for said execution creditors ; and that I have personal knowledge of the same." Another affidavit by said Bliss, taken and subscribed before the judge of probate on the 17th March, 1874, was also appended to said claim, stating "that said Reavis did not pay for the same in his life-time, and that the same is justly due from his estate."

The administrator of the insolvent estate, contesting the validity of this claim, filed the following objections to its allowance : "Said estate does not owe said claim. It is not a proper charge against said estate. It is not properly proven. Said account is barred by the statute of limitations of three years ; also, of six years. Said trustee is dead, and there is no one to represent said claim. Said sale, at which said purchase was made, was illegal. Said sale was not completed; no part of the purchase and property was ever delivered, and no title made to him." The record does not show when these objections were filed.

When the case was called for trial, the administrator ob-

jected to proceeding with it, and to the rendition of any judgment on the claim, on account of the death of said Mooring, which was proved to have occurred in July, 1874 ; but it being shown that Z. W. Woodruff had been appointed the successor of said Mooring as trustee, the court allowed him to be substituted as claimant, and to prosecute the claim in his name as trustee. The trust referred to, as shown by the evidence adduced on this motion, originated in this way : Several executions, issued on judgments against R. G. Mc-Mahon and T. D. Bell, one or both, were levied by the sheriff on several tracts of land, and on various articles of personal property ; some of which were claimed by said Bell as exempt, some by said McMahon, and some by his wife, Mrs. E. R. McMahon, as her statutory separate estate. Prior to the sale under the executions, but on what day the record does not show, all the parties in interest entered into a written agreement, by which it was stipulated " that said James A. Mooring shall buy in at said sale any and all propērty which shall not sell for a fair and reasonable price, and hold it as trustee under this agreement, and shall rent out the property purchased, on such terms as he shall think best, until favorable opportunities occur to sell it for reasonably fair prices ; that he shall apply three-fourths of the rents towards the payment of the amounts that shall be due on said judgments ratably, and shall pay the other fourth to Mrs. E. R. Mc-Mahon, if living, and to her children if she shall be dead ; and the proceeds of the sale of any of said property shall also be applied by said Mooring towards the payment of said judgments ratably." It was provided, also, that in the event of the death or resignation of said Mooring, the parties in interest should have power to choose another trustee, and that the trust should be closed within three years.

The claimant offered in evidence a " statement of account " against Reavis, showing the articles bought by him at the sale, with the price of each, aggregating $1,724.70 ; indorsed on which, in the handwriting of said Reavis, were these words :   " Reavis' purchases at Bell & McMahon's sale." This statement was in the handwriting of said R. G. McMahon, who testified in reference to it, as a witness for the claimant, " that said Mooring, the trustee, a few days after the sale, got after Judge Reavis to pay for said articles ; that he, witness, at the request of said Reavis, made off the statement of articles bought by him, carried it to his office, and laid it on the table before him ; and that this statement was afterwards returned to him, with the indorsement on it in the handwriting of said Reavis, who was the attorney for witness and his wife." The claimant introduced, also, the original ac-

[Woodruff v. Winston.]

count of the sale, as made at the time by the deputy-sheriff, who was proved to be dead. It was proved that this "account of sales," or inventory, was made out by said R. G. McMahon, a few days before the sale, as a matter of convenience, the names of the purchasers, with the price of each article or piece of property, being written by said Mooring, who acted as the clerk of the deputy-sheriff at the sale. The articles charged to Reavis in this statement, and the price .of each, corresponded with the claim filed in this case; with the exception of a wagon and cart, which were not included in the claim, but which were taken away, after the sale, by tenants of Reavis ; and these were the only articles which were proved to have been removed, or to have gone into the possession of Reavis after the sale.

C. J. McMahon testified, as a witness for the claimant, "that Reavis asked him, after the sale, to go with him to R. G. McMahon's wife, and he accompanied him ; that Reavis told her he had bought the property for her, and afterwards spoke, in the same conversation, of having bought the property for the benefit of herself and her children, and that Mrs. McMahon expressed her thanks to him therefor." This witness testified, also, that Reavis never took possession of any of the property knocked down to him ; and R. G. McMahon testified, that the cart and wagon "went into the possession of two of the tenants on Reavis' place, but the other things were not taken away, remaining there on the premises for witness' wife." The original account of sales, as kept by the deputy-sheriff and his clerk, showed that Mooring was the largest purchaser at the sale, but neither he nor Reavis made any cash payments, though cash payments were made by other purchasers amounting to over $823. "The administrator and contesting creditors introduced W. M. Lambeth as a witness, and asked him, if he had heard Judge Reavis, at any time, say anything about this purchase at said sale ; and if so, what he said." The court overruled an objection to this question, and the witness answered, "that said Reavis told him in his office, some time in 1871, that he bought the property at said sale for Mrs. McMahon, and that they had the money and were to pay him for it ; and he further stated, in answer to a question by the attorney for said administrator and contesting creditors, that he meant by *him* Mooring." To the admission of this evidence an exception was reserved by the claimant.

On all the evidence adduced, which the bill of exceptions purports to set out in full, the court rejected the claim ; to which ruling and judgment the claimant excepted, and he

[Woodruff v. Winston.]

here assigns it as error, with the several rulings on evidence to which he reserved exceptions.

SNEDECOR & COCKRELL, and T. B. WETMORE, for appellant.

BRICKELL, C. J.—The claim, or rather the statement of it, filed in the Court of Probate, taken in connection with the affidavit accompanying and verifying it, indicates very clearly the nature of the demand—an account for property purchased by the intestate in his life, and that it was due and payable to Mooring as trustee. Whatever may be the form or evidence of claim filed in the Court of Probate, as a claim against an insolvent estate, it is sufficient, if, taken in connection with the affidavits verifying it, a *prima facie* existing liability to the party on whose behalf it is asserted is shown. *Thornton v. Moore*, 61 Ala. 347.

If the affidavit, verifying the claim, is in any respect defective, objection to it cannot be made for the first time in this court. In the Court of Probate, an insufficient or defective verification may be cured by amendment, at any time before final decree; and of the opportunity of amendment the claimant cannot be deprived, by withholding the objection until after final decree. Nor was there any objection as to the time of filing the claim made in the Court of Probate; and it is too late in this court to urge that it was not filed within the time appointed after the decree of insolvency. The objection could have been obviated in the Court of Probate, if it had been there made, by proof of the time of filing.

If the statute of limitations could be made available as a defense, it was incumbent on the contestant to show that more than six years had elapsed, after the maturity of the debt, before it was filed in the Court of Probate. That does not appear to have been shown, and the statute cannot now be invoked to support the judgment of the Court of Probate.

The controversy in the Court of Probate was limited to the existence of the liability of the intestate, asserted by the claimant. On this contest, the burden of proof was on the claimant, and of the existence of the liability the affidavit verifying the claim was not evidence. The purpose of the affidavit is not evidence to establish a disputed claim, but the prevention of the preferring simulated claims to the prejudice of *bona fide* creditors.—*Brasher v. Lyle*, 13 Ala. 524; *Askew v. Weissinger*, 6 Ala. 907. The evidence seems to us to establish the claim, so far as it relates to the personal property, very satisfactorily. The fact of Reavis' purchases of it at the sale made by the deputy-sheriff, under the superintendence of the trustee, Mooring, and at the prices stated,

[Pettus v. Glover.]

cannot be matter of doubt. That he never took actual possession of the property, is not important. He did not intend that it should come to his possession, but that it should remain in the possession of Mrs. McMahon, for whom he made the purchases. The indorsement made by him on the account, "*Reavis' purchases at Bell & McMahon's sale*," was an implied admission of the correctness of the account. It would scarcely have been made, if in any respect he disputed the correctness of the account, or his liability to pay it. Positive certainty is not requisite to establish the claim—it is sufficient if the evidence, direct or circumstantial, reasonably satisfies the mind of the existence of facts constituting the indebtedness claimed.—*Godbold v. Blair*, 27 Ala. 592.

The evidence of Lambeth should have been excluded. A party's own declarations, made in the absence of his adversary, cannot be converted into evidence for him. Nor can he qualify or control admissions or declarations made at one time by counter declarations made at another time. The evidence, however, if it had been admissible, as it would have been if introduced by the claimant, was in support, not in contradiction of the claim. As to the real estate, the price of which is embraced in the account, there is no objection or plea of the statute of frauds interposed ; and in the absence of such objection, or plea, it is as recoverable as the prices of the personal property.

The Court of Probate erred in disallowing the claim ; and its judgment is reversed, and the cause remanded.