## NEBRASKA LAND & LIVE STOCK CO. v. BURRIS.

1. The refusing a continuance is largely in the discretion of the trial court, and will not be reviewed, unless there has been a manifest abuse of such discretion.

2. Where a continuance is asked on the grounds of the absence of a witness, and the evidence to be given by the witness, as set out in the affidavit upon which the motion is made, is inadmissible under the pleadings, it should be denied.

3. In an action for damages for breach of a contract to irrigate land, a witness who testified that he had a farm that had been irrigated for the past two years, and was acquainted with character of the land farmed by defendant, as compared with his own, was asked. "How much, in your opinion, would fifty acres of fodder corn, properly irrigated on defendant's place, yield?" *Held* not objectionable, as being speculative and an attempt to prove prospective damages.

4. When a contract provided for the furnishing of 50 cows, and also for the irrigation of a certain farm, and that the crops raised on the farm should be fed to these cows, and the contractor failed to furnish the

cows or to irrigate the farm, in an action for damages for breach of contract it was not error to submit to the jury both the questions of measure of damages for failure to furnish the cows and failure to irrigate the farm.

(Opinion filed, Jan. 22, 1898.)

Appeal from circuit court, Meade county. Hon. A. J. PLOWMAN, Judge.

Conversion. Defendant had judgment on counterclaim, and plaintiff appeals. Affirmed.

The facts are stated in the opinion.

*Wesley A. Stuart,* for appellant.

The motion to continue should have been granted. Stone v. Railroad, 3 S. D. 330, 53 N. W. 189; Johnson v. Dinsmore, 9 N. W. 558; Williams v. State, 6 Neb. 336; Gonring v. Railroad, 47 N. W. 18.

*M. McMahon* and *Chas C. Polk,* for respondent.

CORSON, P. J. This action was instituted by the plaintiff to recover $225, alleged to be due it for wood and a team of horses claimed to have been converted by the defendant. The defendant interposed a general denial, and pleaded a number of counterclaims. The case was tried to a jury who found for the plaintiff in the sum of $134.45, and for the defendant $844.35; and a judgment was thereupon entered for the defendant for $709.90 and costs. From this judgment, the plaintiff has appealed. No motion for a new trial was made, and hence the only questions presented for our consideration are questions of law.

The first error assigned is that the court erred in its refusal to grant a continuance. The affidavit upon which the motion was made, after setting up the usual preliminary matters, set out the facts it was claimed could be proved by the absent witness. Respondent contends that this evidence would have been irrelevant and immaterial, and could not have been admitted in evidence under the issues raised by the pleadings. In this contention we are of the opinion, the respondent is cor-

rect. On examination of the pleadings, as disclosed by the record before us, we find no issue presented under which this evidence would have been admissible, and hence the trial court was right in denying a continuance on account of the absence of this witness. It is true that it is stated in the affidavit that this evidence was material, and that the witness was a material witness. But this is not sufficient, The trial court must be able to see from the pleadings and issues raised that the evidence is, or may become, material before it can properly grant a continuance.

The affidavit is also insufficient as to the statement of facts the plaintiff expected to be able to prove by Galbraith, who was claimed to be an absent witness. The affiant states that the defendant represented to him that he sold the team to one Diehl, and that he did not learn until two days before the trial that he sold the team to Galbraith, instead of Diehl, and that he "knows of no other witness by whom said facts can be fully proven." As the gist of the action was a conversion of the property, and the sale by the defendant was admitted by him, it was not material to whom the sale was made. The granting or refusing of a continuance is largely within the discretion of the trial court, and its action will only be reviewed by this court where there has been a manifest abuse of this discretion. In this case there was not only no abuse of its discretion shown, but the court was clearly right in denying the continuance. Gaines v. White, 1 S. D. 434, 47 N. W. 524; Stone v. Railway Co., 3 S. D. 330, 53 N. W. 189.

The next error assigned discussed by counsel for appellant is that the court erred in admitting the evidence of the witness Allen. The defendant, in support of his second counterclaim, sought to prove damages for the failure of the plaintiff to furnish a supply of water to irrigate the land included in a cropping contract entered into by the plaintiff with defendant, which plaintiff agreed to furnish, and for that purpose called Allen, who testified that he had an irrigated farm in the county,

that had been irrigated for the past two years, and that he was acquainted with the land farmed by the defendant, and familiar with the character of the soil as compared with the soil on his own land. He was then asked the following question: "Now, how much, in your opinion would fifty acres of fodder corn, properly irrigated on the place owned by Mr. Benjamin Burris, yield?" Counsel for plaintiff objected to this question as incompetent, irrelevant, immaterial, and purely speculative, unless the witness is shown to have some knowledge of what had been raised on the Burris land by irrigation. Said objection was overruled, and exception taken. His answer was: "Properly taken care of, it would produce five to seven tons per acre. In many cases I have known it to go a great deal higher." Few questions present greater difficulty than those pertaining to the proper method of proving damages under cropping contracts. This court held in Bowers v. Graves & Vinton Co., 8 S. D. 385, 66 N. W. 931, that in such a case the cropper cannot recover for the value of his services, but only the value of his crop of which he is deprived; and we said in that case that "the probable amount and value of the crops can be ascertained with reasonable certainty, and such other damages as the party may be entitled to under the contract can be approximately ascertained and recovered." In this case the evidence elicited tended to show what this land irrigated would have produced. The witness had shown that he was qualified to testify upon this subject, as he had an irrigated farm, the soil of which he had compared with the soil on the farm worked by the defendant, and found it to be similar.

The contention of the learned counsel for the appellant that this evidence was speculative, and an attempt to prove prospective profits, as the basis for a recovery of damages, is untenable. Evidence as to the quantity a given tract of land will yield of grain or other products, under a given state of circumstances is no more speculative than evidence of the rental value of tenements in a city or town or the rental value of farm lands,

In Water Co. v. Hartman, 38 Pac. 62, the court of appeals of Colorado says: "But in order to establish the value at the time of the destruction [of the crop], courts are compelled to resort to several methods of computation, and either or all combined may afford a fair basis; * * * and the third, the proof of the average yield and market value of crops of the same kind, planted and cared for in the same manner, less the cost of maturing, harvesting, and marketing." If as claimed by defendant, he failed to get a crop by reason of the neglect of the plaintiff to furnish a supply of water with which to irrigate the same, which it had covenanted to supply, the defendant certainly was entitled to recover the damages sustained by him by reason of such breach. The plaintiff cannot be heard to say: "I agreed to furnish a supply of water, and I did not furnish it; but you cannot recover damages, because you cannot prove the precise amount of damages you sustained by reason of my failure to furnish the water." The law is open to no such reproach. In a large class of cases it is difficult to prove the exact amount of damages a party sustains by reason of a breach of contract, but the ends of justice are not to be defeated by failure of strict mathematical proof. Sedg. Meas. Dam. p. 593; Cranmer v. Kohn, 7 S. D. 247, 64 N. W. 125. We are of the opinion that the witness was properly allowed to answer the questions asked him, and that the evidence was proper to go to the jury. In fact, in a case like the one at bar it seemed to be practically the best evidence that the defendant could give upon which the jury could base a verdict. The contention of counsel that the defendant's crop if properly irrigated, might have been destroyed by frost, hail or other causes suggests no valid objection to the evidence.

The last assignment of error discussed is that the court erred in its instructions to the jury. The court seems to have submitted all questions of fact to the jury, and read to them Section 4581, Comp. Laws, which prescribes the measure of damages in cases of breach of contract, and declared that was

the law that must govern them in arriving at their verdict.    It is contended that as the contract provided that the plaintiff should furnish 50 cows, which it failed to do, and that the crops raised should be fed to these cows, the court by its instructions permitted the jury to assess damages for both the failure to furnish the cows, and also to recover for the failure to furnish water for irrigating the crops to be fed to them, and thus permitted the jury to assess double damages.    But there are two stipulations in the contract,—one, to furnish the 50 cows; the other, to furnish the water for irrigating the land,—and these stipulations are entirely distinct.    While there is one clause in the contract that the defendant "agrees to sow and plant the said land in such crops as the party of the second part and himself shall agree upon as feed for said milk dairy" the contract also provides for a division of the crops "grown or produced on said premises," under certain conditions therein named.    Construing the whole contract together, it is quite clear that it was contemplated that there would be crops to be divided, and that all the crop was not to be fed to the dairy cows.    In any event, the failure to furnish the stipulated number of cows would not relieve the plaintiff from its contract to furnish the water to irrigate the land, the furnishing of which would have enabled the defendant to raise crops upon the land, to be divided as therein specified.    There was therefore no error in the court submitting both questions to the jury.    Finding no error in the record, the judgment of the circuit court is affirmed.

Rehearing denied, March 16, 1898.