QUARNBERG, Respondent, v. CITY OF CHAMBERLAIN, Appellant.

(137 N. W. 405.)

1. **Appeal—Municipal Corporation—Supersedeas—Bond.**

Under Sec. 454, Code Civ. Proc., concerning the continuance, pending appeal, of an injunction that has been vacated in the trial court, upon giving the stay undertaking therein provided for, and Sec. 455, providing that on appeal by a municipality service of appeal notice stays execution or performance of judgment appealed from, **held**, that an appeal from an order vacating an interlocutory injunction supersedes the vacating order, and the injunction remains in effect without bond or further order below.

2. **Injunction—Damages for Wrongful Injunction—Defenses.**

Where a valid but erroneous injunction was in force, it is no defense to an action for damages for obtaining such injunction to show that plaintiff obeyed a further injunction claimed, but not **held**, to be void, restraining him from doing the same act enjoined, in effect, by plaintiff's appeal.

3. **Injunction—Defense to Damages for Wrongful Injunction—Plaintiff's Disobedience.**

In an action for damages resulting from an erroneous injunction, plaintiff's disobedience of the injunction while effective on appeal is no defense as regards damages suffered by him because of his previous obedience; such disobedience merely lessening damages.

4. **Limitation of Actions—Assessment of Injunction Damages—Commencement of Action.**

Under Sec. 73, Code Civ. Proc., allowing a new action to be commenced within one year after reversal of judgment in a timely action brought on same cause of action, held, that. an assessment before a referee of damages suffered by reason of an erroneous injunction constitutes commencement of an action, and, such assessment having been reversed on appeal, a new action begun within one year is not barred by the general six year statute.

5. **Damages—General Verdict—Special Verdict Involved in General—Review.**

Where damages assessed in a special verdict cover a fraction of the time involved in a general verdict, and are included in the general, the special verdict is immaterial.

6. **Instructions—Damages—Period of Time Involved—Instructions. Presumably Followed.**

Where the period of time during which plaintiff was prevented by an injunction from carrying on his business is defined and limited by the court's instructions, it is presumed the jury followed the instructions, in bringing in a general verdict, part of which time was involved in a special verdict.

7. **Measure of Damages — Injunction — Instructions — Profits of Business.**

On question of damages for loss of profits by reason of an injunction, where it is clear the trial court's instructions as. to damages under a general verdict covered and were limited to a period of time between when plaintiff would, but for the injunction, have completed an artesian well for mill power, and the time when he did complete it, no error was committed.

8. **Injunction—Measure of Damages—Pleadings—Resulting Loss of Profits.**

Where defendant, in its complaint for an injunction averred that plaintiff could and would, if not enjoined, obtain a flow of artesian water from the well he was constructing, sufficient to operate his mill, and admitted that such water would be used to run the mill, and it being conceded that plaintiff did obtain such flow, held, defendant city is presumed to have known that loss of profit to plaintiff's business was inevitable, and may not deny responsibility for damages directly resulting from its acts.

9. **Injunction — Damages — Profits under Established Business — Measure of.**

Where plaintiff's mill business had become established for many years, evidence of his past profits was not so remote.

and speculative as to be inadmissible, in the assessment of his damages resulting from wrongful injunction preventing operation of the mill.

**10.  Injunction—Evidence of Profits as Damages—Net Earnings.**

In assessing damages resulting from an injunction preventing plaintiff from operating his mill, held, that where the business is established, evidence of net profits or earnings is competent; such net earnings are profits.

**11.  Injunction—Attorney's Fees as Damages—Dissolution of Temporary Injunction.**

While attorney's fees or expenses are not allowed as damages on trial of injunction suits on the merits, they are recoverable when expended in procuring dissolution of a temporary injunction wrongfully or improvidently issued.

**12.  Damages for Injunction—Sufficiency of Evidence—Interest.**

Where a verdict, considerable in amount, is largely made up of interest covering many years, and the evidence is such that, if believed by the jury, is sufficient to sustain the finding as to actual damages, it will not be disturbed.

**13.  Review on Appeal—Question Not Briefed.**

A question not discussed in appellant's brief and not presented or relied on on the trial below, will not be considered on appeal.

Whiting, J., concurring specially.

(Opinion filed, June 25, 1912.)

Appeal from Circuit Court, Brule County.  Hon. FRANK B. SMITH, Judge.

Action by Hans Quarnberg against the City of Chamberlain, a municipal corporation, for damages resulting from an injunction against the construction by plaintiff of an artesian well for water for mill power.  From a judgment for plaintiff, and from an order denying a new trial, defendant appeals.  Affirmed.

*Preston & Wagner,* and *B. C. Huddle,* for Appellant.

Was plaintiff's cause of action barred by the statute of limitations.

"Civil actions can only be commenced within the period prescribed in this code, after the cause of action shall have accrued, except where in special cases, a different limitation is prescribed by statute."  Sec. 29, Code of Civil Procedure; Section 68, Code of Civil Procedure.

Section 74, Code of Civil Procedure, does not apply to the case at bar.  This section has reference only to injunctions staying

actions. No injunction was issued against respondent directing him to refrain from bringing this or any other action for damages.

That the statute begins to run from the time that a right of action accrues, without regard to when the actual damages result, is well settled." Aachen & M. Fire Ins. Co., v. Morton, 156 Fed. 656 and 657; Wilcox v. Plummer, 4 Pet. 172 (7 L. Ed. 821).

"A cause of action accrues, when the person owning it, first has a right to sue on it. * * * It accrues at the moment when he has a legal right to sue on it." McPherson v. Swift, 116 N. W. 76 (S. D.).

"A cause of action upon an undertaking for an injunction does not accrue until the final determination of the action in which the injunction was obtained." Dougherty v. Dore, 63 Cal. 170.

The statute begins to run when the plaintiff has it in his power to make his cause of action complete, and he cannot delay its operation and so extend the time in which he can sue by neglecting to perfect his right. The statute runs from the time when he could have sued.

It seems to us that respondent was in no manner deprived of his power to institute this suit for damages on September 27, 1902. Lehman v. Amsterdam Coffee Co., 131 N. W. 362 (Wis.); Everett v. O'Leary, 95 N. W. 901 (Minn.).

Respondent was under no restraint after that order was vacated on October 20, 1902, the restraining order had expired by limitation, and also by the express order vacating the same. Hicks v. Michael, 15 Calif. 107.

"On the dissolution of the temporary restraining order, an appeal was taken by the plaintiff, although accompanied by a supersedeas does not keep the restraining order in force. Neiser v. Thomas, 46 Mo. App. 47; Slaughter House cases, 10 Wall. 297; Knox Co. v. Harshman, 10 Sup. Ct. Rep. 8; Sullivan v. Weihler, 32 N. W. 787 (Minn.) Wait's Practice, Vol. 2, page 120; Gulliford v. Cornell, 4 Abb. Pr. 220.

The court never made any order after October 20, 1902, continuing the original restraining order.   Prader v. Grimm, 13 Cal. 586.

In Hovey v. McDonald, 109 U. S. 161, it is said:   "That neither a decree for an injunction, nor the decree dissolving an injunction was suspended in its effect by the writ of error, though all requisites for the supersedeas were complied with.   High on Injunctions, (2d Ed.) 1709; Hicks v. Michael, 15 Cal. 107; Westcoff v. Upham, 107 N. W. 2 (Wis.).

When the restraining order of November 14, 1902, was granted, and the appeal had been taken to the Supreme Court, the trial court had no jurisdiction to make the order and Quarnberg was not bound thereby, when the notice of appeal and the undertaking was served the trial court lost jurisdiction.   Bryan v. Berry, 8 Cal. 130; Stewart v. Taylor, 8 Pac. 605( Cal.).

The jury returned their special verdict fixing the loss of profit at $576.00, when in truth and in fact under respondent's theory it could not have been in excess of $422.40.   The attorney's fees should not be allowed.   Wood v. State, 5 Atl. 476.

Bear in mind the general verdict was in the sum of $8,854.56, part of this general verdict was in the amount found in the special verdict, which is in excess of what the evidence will sustain.

It has been held that:   "The profits which a party claims that he would have made from a contemplated extension of his business are too remote."   Railway Company v. Harrison, 86 Ill. 215.

The evidence is wanting as to the cost of new wells and not making allowances for contingencies of his business, ascertaining his sales whether for cash or for credit, good and bad debts. Mfg. & Trader's Bank v. Dare Co., 16 N. Y. S. 67.

Regarding profits growing out of injunctional orders, there is serious conflict of authorities, but no authority can be found, we venture, that profits can be determined for future contemplated additional and extended business.   Chicago City Railway Company v. Howison, 86 Ill. 215.

Speculative and remote damages are not properly allowed: —remote and contingent benefits that might have accrued from

the increased value of the property, or its future earning capacity, cannot be taken into account in this action. Stuart v. State, 20 Md. 97; Wood et al. v. State, 5 Atl. 476.

The general rules governing the element of damages in the law of loss of profit depends upon the fact that the profits must have been proximate and not remote, absolute and not contingent, certain not uncertain. Walrath v. Redfield, 11 Barb. 368; Wolff v. Hvass, 32 N. Y. S. 798.

The evidence must afford the jury some data from which they can with reasonable certainty determine the amount of the profits. Ill. S. L. R. Coal Co. v. Decker, 3 Ill. App. 135; Jones v. Call, 2 S. E. 647; Martin v. Deets, 36 Pac. 368 (Cal.); Consumers Pure Ice Company v. Jenkins, 58 Ill. App. 519; Pollock v. Gantt, 44 Am. Rep. 519; Martin Waterpower Co. v. Waters, 5 Ill. App. 159; Dale v. Grant, 34 N. J. L. 142.

"The law requires that the injured party shall do whatever he reasonably can, and improve all reasonable opportunities to lessen the damage." Sherman Center Town Co. v. Leonard, 26 Pac. 717-718 (Kan.).

*Brown & Brown,* for Respondent.

Was the action barred by the statute of limitations?.

This is not specifically an action on the bond. A municipal corporation is exempted from giving a bond not to enable it to despoil others with impunity, or to commit wrongs without incurring any liability therefor, but as was said in Territory v. Woodbury, 44 N. W. 1077, simply because no bond could make an adverse party more secure.

The case should, therefore, be considered in the light of an action for damages against the city, to be governed by the same rules as would govern an action for damages on an injunction bond given by a private party who sues out an injunction. The right of action on an injunction bond given by a private party does not accrue until after the final termination of the action or proceedings, and in the case at bar the city of Chamberlain occupies precisely the same position that a private party would occupy who had wrongfully sued out an injunction and given a

bond for the payment of any damages that the party enjoined might sustain.

In Willard v. Wood, 164 U. S. 523, 17 S. Ct. 176, it is said the general rule as to limitation of actions is "that if the plaintiff mistakes his remedy, in the absence of any statutory provisions saving his rights,   *   *   *   and during the pendency of the action the limitation runs the remedy is barred." But in South Dakota, as in many other states, where a plaintiff mistakes his remedy there is a statutory provision saving his rights. Code of Civil Procedure, Sec. 73.

Under section 73 of the Code of Civil Procedure, therefore, Quarnberg had one year after February 24, 1909, in which to commence this action, and it was, in fact, commenced September 16, 1909.

In Covington v. Griffin, 98 Va. 124, it was held that the pendency of a report in reference was in effect an action and suspended the running of the statute of limitations. Thomas v. Pointer, 14 Lea, 343 (Tenn.).

The defendant, having procured the mandate of the court forbidding Quarnberg from drilling on his well, cannot now be heard to say that Quarnberg ought to have defied the court and gone on drilling his well in violation of the restraining orders they themselves had procured and served upon him. The defendant clearly ought to be liable for all the damages that Quarnberg sustained by reason of the entire delay, imposed upon him by the city, in procuring power to operate his business.

Code Civ. Proc., Sec. 454, provides that on the giving of the undertaking mentioned therein the judge may order the injunction granted to be continued pending the appeal. Section 455 provides that when a municipal corporation appeals, the simple service of the notice of appeal perfects the appeal, and stays the execution or performance of the judgment or order appealed from. As soon as the notice of appeal from the dissolving order was served, that order could no longer be performed, it could not go into effect, the restraint on Quarnberg was not lifted; the temporary injunction remained in force. That this is the effect of the

appeal seems to be indicated by this court in Garvin v. Pettee, 13 S. D. 239, where it is said that an appeal prevents any change in the status of the property during the pendency of the appeal. See, also, Territory v. Woodbury, 44 N. W. 1077 (N. D.), and, Dewey v. Superior Court, 22 Pac. 333 (Cal.); Hurd v. People, 23 Pac. 342 (Colo.); State v. Duluth Street Ry. Co., 50 N. W. 332 (Minn.)

If by drilling those three days he committed a contempt the court could punish him, but his act could not interfere with section 455 of the Code of Civil Procedure, which suspended the order vacating the restraining order immediately upon the service of the notice of appeal. While disobedience may be punished as contempt, it does not deprive the party enjoined from his right to damages. 16 A. & E. Ency of Law, (2d Ed.) 458.

The fault of appellant's reasoning lies in the assumption that the plaintiff sustained any loss at all during the period between September 26 and October 20, 1902, by reason of being restrained from drilling his well. Had he been drilling every day of those twenty-four he would have had no more power during those twenty-four days than he did have. He would not yet have got his well completed or procured any additional power. The loss he sustained by being prohibited from drilling during those twenty-four days did not accrue until the time when his well would have been completed had he not been restrained, and that would have been, according to all the testimony, about two months and a half later. In other words, had he not been restrained from drilling on his well he would have had the well completed about December 12, 1902, and would then have had more than sufficient power to run his mill at full capacity.

It is contended that the attorney's fees paid by the plaintiff to procure the dissolution of the temporary injunction should not be allowed, but this court in the case of Edmison v. Sioux Falls Water Company, 14 S. D. 486, and McLennon v. Fenner, 19 S. D. 492, has held that the attorney's fees incurred by plaintiff on the application to dissolve a temporary injunction or restraining order is a proper item of damages, and it will be observed that it

was only the attorney's fees incurred by plaintiff on the motion to dissolve the temporary injunction in this case, which were allowed. No item of attorney's fees for the trial of the general case was included in the amount of damages found by the jury in either the general or the special verdict.

The new well was necessary to enable him to maintain his business to the same extent that he had been carrying it on for many years, not to extend it or to increase it beyond that, and the defendant by its injunction prevented him from doing this and destroyed the business he already had existing. Richards v. Johnson, 9 N. W. 423 (Mich.); Creek v. McManus, 32 Pac. 675 (Mont.); Shepard v. Milwaukee Gas Light Company, 15 Wis. 349; Kentucky Heating Company v. Hood, 22 L. R. A. (N. S.) 588 (Ky.).

The defendant's milling business was a business which had been established and profitably operated for many years; his profits for years had averaged about 24 cents per bushel of wheat ground—not only in the year 1902 but taken generally, running year by year. (Tr., pages 71, 72).

When defendant commenced the action for an injunction, it avowed in its complaint its purpose to prevent plaintiff from obtaining a supply of water sufficient to run his mill; it declared in the complaint the certainty that plaintiff from this well would obtain a flow of water sufficient to operate his mill at all times, and it declared its knowledge of the fact that he was going to use the power so obtained for the purpose of manufacturing flour in his mill. It asked for the injunction for the express purpose of preventing him from obtaining such power, and the loss of profits which plaintiff sustained through the granting of the injunction was an element of damage which the defendant knew would inevitably flow from the granting of the injunction.

Under these circumstances, the loss of profits which plaintiff could have made during the time he was deprived by reason of the injunction of sufficient power to run his mill was damages which he is entitled to recover. Wallace v. Pennsylvania R. Co.,

52 L. R. A. 3, and cases cited in note; Lambert v. Haskell, 22 Pac. 327 (Cal.).

Where an established business of a permanent character, as a mill for the manufacture of flour, is interrupted by the wrongful act of another, the owner is entitled to recover the profits lost by the cessation of business, and the net earnings of the present and past are proper to be considered in arriving at the amount of the damage. Terre Haute v. Hudnut, 13 N. E. 686 (Ind.).

The owner of a paper mill fully equipped and in profitable operation, from which the state wrongfully withholds the water to operate it, is entitled to recover for loss of profits for such withholding, where it proves the number of tons its production was reduced, and the profits it made per ton. Lakeside Paper Co. v. State, 45 App. Div. 112, 60 N. Y. Supp. 1081; Weeks v. State, 48 App. Div. 357, 63 N. Y. Supp. 203; Gibson v. Fischer, 25 N. W. 914 (Ia.) Woodin v. Wentworth, 23 N. W. 813 (Mich.); Chapman v. Kirby, 49 Ill. 211; White v. Mosely, 8 Pick. 356; Goebel v. Hough, 2 N. W. 847 (Minn.) Gilbert v. Kennedy, 22 Mich. 117; Schile v. Brokhaus, 80 N. Y. 614; Bagley v. Smith, 10 N. Y. 489; Blagen v. Thompson, 31 Pac. 647 (Or.); Wakeman v. Mfg. Co., 101 N. Y. 209; Fairchild v. Rodgers, 20 N. W. 191 (Minn.); Schrandt v. Young, 89 N. W. 607 (Neb.) Rule v. McGregor, 90 N. W. 811 (Ia.) Shoemaker v. Acker, 48 Pac. 62 (Cal.); Bryan v. McCom, 53 Pac. 637 (Cal.); Emerson v. Pac. Coast & C. Co., 104 N. W. 573, 1 L. R. A. (N. S.) 445 (Minn.); Leonard v. New York, etc., Telegraph Co., 41 N. Y. 544; Fell v. Newberry, 64 N. W. 474 (Mich.) Treat v. Hiles, 50 N. W. 896 (Wis.); Hinchborn v. Bradley, —— N. W. 592 (Ia.); Cranmer v. Kohn, 7 S. D. 247; Nebraska Live Stock Co. v. Burris, 10 S. D. 430; Carron v. Wood, 26 Pac. 388 (Mont.).

Plaintiff was forbidden by the express order of the court to resume work after that vacation order. All proceedings under the order were stayed for six days. It was not only the understanding of the plaintiff, but the understanding of the court, and the defendant's officers and its attorneys that the plaintiff was expressly forbidden to do anything for those six days.

There is nothing that the plaintiff could have done to lessen or minimize the damages that he sustained in this case, that he did not do.

SMITH, J.  For some nine or tên years prior to 1902, Hans Quarnberg, the plaintiff in this action, had been a resident of the city of Chamberlain, and for seven or eight years had operated a flour mill, near the bank of the river, at that place; the motive power used being water pressure from artesian wells.  In the seven or eight years during which artesian water power was used, he had constructed four wells in succession, for the reason that, after a number of years' use, the artesian water corroded the casing of the wells and caused the flow to decline or cease. Where this occurred, plaintiff put down a new well, whose flow was added to that of the old wells.  In September, 1902, the pressure from the wells then flowing had decreased so that he was unable to operate the mill at full capacity, and he began the construction of a new well on his premises.  Some time after the beginning of this new well, the defendant, city of Chamberlain, began an injunction action to enjoin him from drilling the well, or further tapping the artesian water supply.  In that action, on September 26, 1902, the city caused to be issued and served a temporary restraining order, which was vacated on October 20, 1902, on Quarnberg's motion.  On October 25, 1902, the city perfected an appeal to the Supreme Court, from the order vacating the restraining order, without giving an appeal bond, asserting its right as a municipality to appeal without giving bond. The plaintiff, Quarnberg, questioned the right of the city to appeal without an undertaking, and attempted to resume work on the well.  The city thereupon applied to the circuit court for an order restraining him from proceeding with the construction of the well, pending the appeal to the Supreme Court from the order vacating the preliminary injunction.  At the hearing the circuit court held that the city was not required to give an undertaking on appeal, and on November 14th granted a supplemental restraining order without bond or undertaking, which was served on Quarnberg, and thereafter he refrained from further work on the well until March 19, 1903, at which time the supplemental

order was vacated. Pending these proceedings, the original injunction action came on for trial at the December term, 1902, of the circuit court, and on January 3, 1903, that court rendered its decision in favor of Quarnberg on the merits, and judgment was entered dismissing the action on February 7, 1903. Thereupon the city obtained various orders from the circuit court, staying all proceedings on the judgment, until April 1, 1903. During this time, the city failed to perfect its appeal from the final judgment and failed to submit its appeal from the order of October 20th, dissolving the temporary order, at the April term, 1903, of the Supreme Court. On March 12th Quarnberg's counsel served notice of motion for a dissolution of the order of injunction of November 14, 1902, restraining work on the well, and also for a vaction of the order, extending the time for appeal in the main action until April 1, 1903. On the hearing of this motion, on March 19th, the court vacated its supplemental injunction order of November 14, 1902, but refused to vacate the order extending the time for perfecting an appeal from the judgment in the action. On July 17, 1903, Quarnberg obtained an order from the Supreme Court to show cause on July 29th why the record on appeal from the order of October 25, 1902, dissolving the temporary restraining order, should not be returned and filed in that court, and the appeal dismissed for want of prosecution. Thereafter, on September 23, 1903, pursuant to this application, the Supreme Court granted an order finally dismissing the appeal. On March 19, 1903, immediately upon the dissolution by the trial court of the restraining order of November 14, 1902, Quarnberg resumed work on the well, and completed it June 14, 1903.

[1] It was the contention of the defendant city throughout that the appeal by the city, from the order of October 20, 1902, vacating the injunctional order, operated as a supersedeas and left the original restraining order in full force and effect. We think counsel for the city were correct in this contention, and that such was the effect of the appeal without a supersedeas bond or further order of the court.

Section 454, Code of Civil Procedure, provides, in an action between private parties, that the trial judge may order that an

injunction granted and thereafter vacated be continued in force pending an appeal, upon the giving of the undertaking therein prescribed. But section 455 provides that, when a municipal corporation appeals, the service of the notice of appeal perfects the appeal and stays execution or performance of the judgment or order appealed from. The order of October 20th, vacating the temporary injunction, was duly appealed from by the city, and it is clear that the operation and effect of the order appealed from was stayed by the appeal and the order remained in full force and effect.

[2] Thereafter, in November, 1902, Quarnberg attempted to resume work on the well, in violation of the restraining order pending an appeal, and the circuit court November 14, 1902, on application of the city, issued a second or supplemental restraining order, preventing Quarnberg from violating the pending injunctional order. Appellant's contention on this appeal, that the restraining order of November 14, 1902, was issued without jurisdiction and was void, can avail defendant nothing, because it is immaterial to the rights of Quarnberg whether he refrained from proceeding with his work on the well, in obedience to one or the other of the injunctional orders. Legally, he was bound to obey the restraining order which was continued in force by the appeal, and, while we do not decide that question, it is not at all clear that the circuit court was without jurisdiction to issue the order enjoining Quarnberg from violation of the injunctional order which was before the Supreme Court at that time for review. In any event, it is entirely clear that the defendant, Quarnberg, by the operation and effect of the various injunctional orders procured by the defendant city, was restrained from performing and did not perform any work on his well from September 27, 1902, until after March 19, 1903. It appears, however, that on March 19, 1903, and before the dismissal of the appeal by the Supreme Court, Quarnberg, in violation of the injunctional order kept in force by the appeal, resumed work on his well, and continued the same until the completion of the well on June 14, 1903.

[3] It is clear that this violation of the pending injunctional order in no way released or affected any damage he may have

sustained because the time during which his damage would have continued to accrue was thereby lessened to the extent of the period during which he acted in violation of the order. The defendant city is not in position to complain of Quarnberg's act which thus resulted in lessening its liability. Appellant's contention that, if any damages are recoverable against the city, the trial court erred in allowing proof of damage accruing subsequently to November, 1902, for the reason that the supplemental restraining order of that date was without jurisdiction and void, and did not prevent Quarnberg from proceeding with work on the well, is disposed of by what we have already said. Whether the trial of the main action in which final judgment was entered February 7, 1903, in any way affected the injunction order pending on appeal, we are not called upon to decide in this case, for the reason that the operation and effect of the judgment were stayed until July 1, 1903, by orders of the trial court made upon application of the city for extension of time in which to perfect an appeal from the judgment, and plaintiff had resumed work on the well March 19, 1903, and completed it June 14th, long before the defendant city allowed the judgment to become effective by abandonment of its proposed appeal.

[4] The defendant pleaded the statute of limitations in bar of plaintiff's recovery, alleging: (1) That the action was barred by the statute of limitations which expired six years from September 27, 1902; (2) that the action was barred by the statute of limitations which expired six years from October 1902; (3) that the action was barred by the statute of limitations which expired six years from January 3, 1903; (4) that the action was barred by the statute of limitations which expired six years from March 19, 1903.

At the trial, plaintiff, in rebuttal of the plea of the statute, offered in evidence the judgment of the Supreme Court in the case of City of Chamberlain, Plaintiff and Appellant, v. Hans Quarnberg, Defendant and Respondent, which recites that: "The judgment and order of the circuit court within and for Brule county, appealed from herein, be and the same is hereby reversed, and it is further ordered that this action be and it is hereby re-

manded to said circuit court, for further proceedings according to law and the decision of this court." The decision in which the foregoing judgment and order were entered will be found reported in 23 S. D. 55, 119 N. W. 1026. An examination of the decision discloses that at the close of the trial on the merits, in the circuit court, final judgment was entered, dismissing the action, on the 7th of February, 1903; that on the 26th of September, 1903, the trial court, on the application of defendant, Quarnberg, made an order appointing a referee to ascertain the damages sustained by defendant, Quarnberg, by reason of the issuance of the injunction of September 26, 1902; that the referee heard the evidence, and on December 30, 1903, made report to the circuit court; that judgment upon the report was entered, awarding Quarnberg damages in the total sum of $6,292.25, with costs, against the city of Chamberlain, and also against certain persons who had signed an undertaking on the issuance of the original injunctional order; and that an appeal was taken to the Supreme Court, where, for reasons assigned in the decision, the judgment of the circuit court was reversed and the action remanded to the circuit court for further proceedings according to law and that decision. The judgment, thus reversed, was entered in a proceeding in which this plaintiff, Quarnberg, sought an assessment and recovery of the same damages claimed in this action. The judgment of reversal was handed down on February 24, 1909. Thereafter on September 16, 1909, this action was begun. Code of Civil Procedure, § 73 provides: "If an action be commenced within the time prescribed therefor, and a judgment therein be reversed on appeal, the plaintiff, or if he die and the cause of action survives, his heirs or representatives may commence a new action in one year after the reversal." The assessment of damages before a referee was clearly the commencement of an action within the meaning and intent of this section of the Code of Civil Procedure. Stevens Lumber Co. v. Kansas City Lumber Co., 72 Mo. App. 248; McOmber v. Chapman, 42 Mich. 117, 3 N. W. 288; Weathersly v. Weathersly, 31 Miss. 662; Givens v. Robbins, 11 Ala. 156; Drane v. Hodges, 1 Har. & McH. (Md.) 518. As to what constitutes the commencement of an action, see Coxe v. State, 144 N. Y. 396,

39 N. E. 400; Corkings v. State, 99 N. Y. 491, 2 N. E. 454, 3 N. E. 660; Marsh v. St. Croix County Supt., 42 Wis. 355; Woodruff v. Winston, 68 Ala. 412; Lacey v. Newcomb, 95 Iowa, 287, 63 N. W. 704; Guild v. Hale, 15 Mass. 455; Potts v. St. Paul Athletic Park Ass'n, 84 Minn. 217, 87 N. W. 604; Peck v. Randall, 1 Johns. (N. Y.) 165.

It is perfectly clear, therefore, that plaintiff's claim for damages was not barred by any period of limitations, for the reason that the present action was commenced within a year after the reversal of the judgment of the circuit court.

We come next to a consideration of the question of damages. At the trial, the court submitted a special verdict which was nominally to cover the amount of damages accruing between September 27, 1902, when the injunction was served, and October 20, 1902, when the same was vacated and an appeal taken to the Supreme Court. This special question as to damages was submitted to the jury under instructions which assumed, for the purposes of that verdict, that plaintiff would be entitled to recover in the action only such damages as accrued during a certain period. The theory evidently was that, if it should be decided that plaintiff could recover damages for that period, but not for any other, judgment might be entered on the special verdict without a new trial. In response to these instructions, the jury returned a special verdict for $1,166.50, which was itemized, and consisted of $576, for 24 days' loss of profits; $150, attorney's fees on dissolution of temporary injunction; and $440, interest. It is conceded that the same amount went into and constituted a part of the general verdict for $8,854.56, returned by the jury. It is apparent that the amount of this special verdict was not for damages actually accruing between September 26th and October 20th, for the reason that, under the undisputed evidence, it required 2½ months to complete the well from the point where work thereon was suspended by the injunctional order, and, if no injunction had issued, the additional power of the new well would not have been available until about December 12, 1902, and no actual damage could have begun to accrue until that time. The damages intended, therefore, must have been such as accrued after December 12,

1902, covering a period of 23 or 24 days. That the damages covered by the special verdict did not cover the actual period between September 26 and October 20, 1902, is made perfectly plain by the instructions to the jury: "I will submit the question to you as to what the damages by reason of the sinking of the well being postponed this 23 or 24 days. That would be whatever profits he would have earned had he been allowed to operate the well for that additional time, together with the attorney's fees and expenses that he was put to in getting the injunction dissolved, together with interest on that from the time, I would say, July 1, 1903. That is in addition now to your general verdict. I have submitted the general question to you as to what the entire damages were from the time the injunction was issued on September 27th until it was finally disposed of in the spring with the addition of 2½ months that it took him to complete the well."

[5] The special verdict, therefore, is only a finding of the amount of damage accruing in 23 or 24 days out of the entire period over which it is claimed the damages extended, and, the same damages being included in the general verdict, it is unnecessary further to consider the special verdict, which becomes immaterial. Two questions arise—whether the damages assessed in the general verdict cover any period of time during which no damages were legally assessable, and whether the evidence shows them to be remote or speculative. In considering these questions, a distinction must be observed as to the evidence in the record relating to the general character, conduct, and profits of the business, as a basis for the assessment of damages and that which relates to the period of time during which the plaintiff was prevented from carrying on his business by reason of the injunction.

[6] The latter period is defined and limited by the instructions of the court, which we must presume were followed by the jury.

[7] After referring to certain special damages for labor necessary to put the well in condition for resuming the work of drilling and for attorney's fees expended in procuring a dissolution of the supplemental injunction, the court says: "The chief item of damage that he claims, however, is the loss of what you might

term the profits that he would have made if he had been permitted to sink this well and operate his mill during the winter and spring of 1902 and 1903." We are quite clear, therefore, that the jury were given to understand that the damages to be assessed in the general verdict were to cover the period beginning about December 12, 1902, and terminating about June 14, 1903, when the well was completed, and that, in this respect, no error appears in the record. No question of competency of evidence is presented by the record as related to the period covered by the damages. As stated in appellant's brief: "All other assignments of error embrace the question as to the measure of damages. All of the questions as to the admissibility of testimony and the adverse rulings thereon, and the exceptions taken, also the judge's charge to the jury, are included in the forgeoing question."

[8] In its complaint in the action for an injunction, defendant city averred that, if Quarnberg were permitted to continue the construction of his well, he could and would obtain a flow of water sufficient to operate his mill, and admits its knowledge that the flow of water so obtained was to be used for manufacturing flour, and it stands conceded that, upon the completion of the well, Quarnberg did in fact obtain the flow alleged and sought. The city must be held to have known that loss of profits to plaintiff's business was inevitable, and may not deny responsibility for such damages as were the direct result of its acts. In view of the statute giving respondent the right to another action within a year after a reversal of the action in which he sought to recover the identical damages sued for in this action, it is unnecessary to consider appellant's contention that the action sounds in tort, that a right of action accrued the moment the injunction was served, and the statute of limitations commenced to run at that date.

[9] Appellant's contention that, as a general rule, profits which might be anticipated from a proposed extension of business are too remote, is undoubtedly correct in principle. But this rule is not applicable to the facts in this case. It must be borne in mind that plaintiff's business had been established for many years, that he had an established market for the products of his mill, and that the margin of profits could be and were shown by the evi-

dence covering a long series of years, as a basis for computing actual damages. There was no contemplated extension of the capacity of the mill, itself, which was undisputed. In this case, plaintiff, by the acts of defendant, was prevented from tapping and turning into his mill, as motive power, the flow of artesian water, to the use of which he was legally entitled. In Woodin v. Wentworth et al., 57 Mich. 278, 23 N. W. 813, plaintiff brought suit against defendants for unlawfully withholding and diverting the waters of a river which furnished motive power for his mill, and to recover profits which would have been made if the water had not been diverted. The diversion was by means of a dam erected by defendants above plaintiff's mill. It would seem to be immaterial, in such a case, whether the water he withheld by means of a dam, or by a wrongful injunctional order. The plaintiff was held entitled to recover profits lost by reason of not being able to run his grist mill to its full capacity during the time the water was withheld. In Lambert v. Haskell, 80 Cal. 611, 22 Pac. 327, the same rule was applied to loss of profits resulting from the wrongful issuance of an injunction. It was held that loss of profits in an established business were not speculative or remote, and that direct evidence of profits actually made was admissible. In Lakeside Paper Co. v. State, 45 App. Div. 112, 60 N. Y. Supp. 1081, profits in an established business lost by withholding water from plaintiff's mill were held recoverable. To the same effect, see Weeks v. State, 84 App. Div. 357, 63 N. Y. Supp. 203; Gibson v. Fischer, 68 Iowa, 29, 25 N. W. 914; Lambert v. Haskell, 80 Cal. 611, 22 Pac. 327; Galveston City Ry. Co. v. Miller (Tex. Civ. App.) 38 S .W. 1132.

[10] Appellant further contends that the evidence is insufficient to sustain a verdict for loss of profits, because plaintiff offered no evidence to show the expense of running, supplying, and maintaining the mill. The plaintiff testified that in estimating the average net profits he took into consideration the running expenses, including wages of men, wear and tear on machinery, insurance, taxes, and the amount of capital invested (which would include the cost of wells) ; that the average profit was from 22 to 24 cents per bushel, and the capacity of the mill was 240 bushels.

per day. Such evidence, however, is not indispensable to a recovery for loss of net earnings in an established business. It is competent to prove average net earnings as a basis upon which the jury may estimate loss of profits. City of Terre Haute v. Hudnut, 112 Ind. 542, 13 N. E. 686. The testimony as to net profits in an established business is competent, subject to the right of defendant's counsel to cross-examine as to all matters which may affect the question of profits. Carron v. Wood, 10 Mont. 500, 26 Pac. 388. In City of Terra Haute v. Hudnut, supra, Justice Elliott says: "'What are the reasonable earnings of that mill per day now?' The witness answered, 'There are times during the year when our net earnings are larger than at others.' He was then asked, 'What would be a fair average?' and he answered, 'One hundred and fifty dollars per day.' It appears from the cross-examination that the term 'net earnings,' as used by the witness, meant profits, and this is the legal meaning of the term. St. John v. Erie, etc., Co., 22 Wall. 146, 22 L. Ed. 743. It will be observed that the question asked does not refer to future profits, but to the average profits that the mill was then earning or had earned. The testimony upon this question was, it is important to keep in mind, as to the profits that the mill had earned, and was then earning. This is an important factor in the investigation, and distinguishes the case, every clearly, and very distinctly, from those cases in which it is held that evidence of speculative prospective profits is not competent. This question here is: Had the appellees a right to prove what profits their mill had earned in the past, and what it was earning in the then present? There was no attempt to prove what it might earn in the future. What exists in the present or has existed in the past cannot be considered a matter of speculation. It is not to be forgotten that the mill was and had been in active operation, with a known and established business. The case is for this reason not at all like one in which the business has not been in existence. It is this fact which distinguishes the case under examination from the case of Western Gravel Road Co. v. Cox, 39 Ind. 260, upon which the appellant places so much stress. In that case the profits were entirely pros-

pective; they were neither matter of the present nor the past, but were wholly of the future." The reasoning in this case is directly applicable to the case at bar, and is in accord with the great weight of authority. See Shepard v. Milwaukee Gaslight Co., 15 Wis. 318, 82 Am. Dec. 679; Kentucky Heating Co. v. Hood, 133 Ky. 383, 118 S. W. 337, 22 L. R. A. (N. S.) 588, 134 Am. St. Rep. 457; Chapman v. Kirby, 49 Ill. 211; White v. Mosely, 8 Pick. (Mass.) 356; Goebel v. Hough, 26 Minn. 252, 2 N. W. 847; Gillbert v. Kennedy, 22 Mich. 117; Schile v. Brokhahus, 80 N. Y. 614; Bagley v. Smith, 10 N. Y. 489, 61 Am. Dec. 756; Treat v. Hiles, 81 Wis. 280, 50 N. W. 896; Fairchild v. Rogers, 32 Minn. 269, 20 N. W. 191; Hichorn v. Bradley, 117 Iowa, 130, 90 N. W. 592; Cranmer v. Kohn, 7 S. D. 247, 64 N. W. 125; Nebraska Live Stock Co. v. Burris, 10 S. D. 430, 73 N. W. 919.

[11] Appellant contends that the court erred in instructing the jury that they might include, in their verdict for damages, the amount necessarily expended in procuring the vacation of the injunctional order. Attorney's fees or expenses are not allowed as damages upon the trial of injunction actions on the merits (Edmison v. Sioux Falls Water Co., 14 S. D. 486, 85 N. W. 1016), but are recoverable when expended in procuring the dissolution of a temporary injunction wrongfully or improvidently issued. This rule is sustained by the great weight of authority. Littleton v. Burgess, 16 L. R. A. (N. S.) note c, beginning page 55; McLennon v. Fenner, 19 S. D. 492, 104 N. W. 218.

[12] The verdict in this case, while considerable in amount, is evidently largely made up of interest covering a long period of years, and an examination of the whole record discloses evidence which, if accepted and believed by the jury, is sufficient to sustain the finding as to actual damages. For that reason it cannot be disturbed by this court.

[13] No question of constitutional law, such as was suggested in the oral argument, is discussed in appellant's brief, nor does it appear to have been presented or relied on in the trial court. For these reasons we shall not consider it on this appeal. Lyon v. Bertolero, 23 S. D. 82, 120 N. W. 766; Ross v. Hawkeye

Ins. Co., 93 Iowa, 222, 61 N. W. 852, 34 L. R. A. 466; Clear-·water Bank v. Kurkonski, 45 Neb. 1, 63 N. W. 133.

We find no reversible error in the record.

The judgment and order of the trial court are affirmed.

WHITING, J. While I concur in the conclusion of my colleague that the judgment and order of the trial court should be affirmed, yet I feel justified in calling further attention to one of the contentions of appellant. In my concurring opinion in case of City of Chamberlain v. Quarnberg, 23 S. D. 55, 119 N. W. 1026, I called attention to the fact that the restraining order dated ·September 26, 1902, was issued in strict conformity with section 201 of the Code of Civil Procedure, and that therefore the liability of the sureties on the undertaking given in connection with such ·order extended only to damages suffered up to the return day of such order, namely, October 20, 1902. The order of September 26th, by virtue of its express provisions, terminated upon such return day without any further order of the court; but for some reason it appears that the court, upon the return of the order to show cause why an injunction pendente lite should not issue, instead of ruling directly upon the real question before it at that time, made no reference to it, but made an order which by its ·express terms purported to vacate and dissolve the said order of September 26th. There can be no question but that, at the most, the only effect of such order of October 20th, other than confirming the expiration of the order of September 26th, would be an implied denial of the injunction pendente lite, and it seems perfectly clear that an appeal from an order denying an injunction cannot have the effect of creating or continuing any injunction. However, the appellant treated the order of October 20th as though it were an order dissolving an injunction pendente lite and appealed therefrom, and, during the pendency of such appeal, maintained the position (supporting such position by the supplemental order procured in November) that the restraining order of September 26, 1902, was continued in force and effect pending such appeal. While it is clear that appellant was· wrong in such contention at that time, yet, by so contending, it put itself in a posi-

tion where it cannot now be heard to claim that the respondent was not restrained from proceeding on his well after October 20, 1902, and, so far as the appellant is concerned, this cause should be determined exactly as though the order of September 26, 1902, instead of being an order under section 201 of the Code of Civil Procedure, was the usual order granting an injunction pendente lite, in which case, upon the dissolution of same, an appeal from the order of dissolution would continue in force pending such appeal.